## ALBERT M. COLLINS v. JANE PRIMROSE COLLINS

13 So. (2nd) 445                               January Term, 1943
May 14, 1943                                              En Banc
Rehearing Denied June 8, 1943

*Warren & Rothstein* and *A. H. Rothstein,* for appellant.
*Knight & Knight* and *Albion W. Knight,* for appellee.

THOMAS, J.:

The husband prevailed in his suit for divorce and brought an appeal to test the propriety of that part of the final decree ordering him to pay his quondam wife five dollars each month as alimony and two thousand dollars in cash. These provisions coincided with the recommendations of the special master.

Considering the matter of alimony in the light of decisions of this Court establishing the rule that it should be determined by the necessities of the one and the abilities of the other we cannot conclude that the chancellor was at fault in adopting the master's recommendation that this token-award be made; nor have we found that the latter erred in weighing the testimony on this issue.

The requirement that the plaintiff disgorge two thousand dollars was the result of the master's study of contributions of service by the wife to the matrimonial enterprise and of money to the joint bank accounts. Throughout the marriage

appellee performed all the cooking and household work, including laundering, without help except the occasional services of a charwoman. When the appellant and appellee were married they immediately moved into a home owned and occupied by her parents. About four years later the mother died and after another year passed the father died also. A short time before his death the father deeded the property to appellee upon her promise that she would maintain a room there for the use of her brothers. At the time the home was encumbered by a mortgage which was subsequently paid. The house consisted of three stories. The first, an apartment, was rented at approximately fifty dollars a month; the second and third were occupied by the appellant, the appellee and the members of their families. Thus, during the entire marriage, appellant was never put to any expense for house rent. According to the testimony which the master elected to believe the appellant for nearly four years received the income from the apartment, approximating twenty-five hundred dollars. Eventually the appellee collected this rent, but it was used by her to defray expenses of the home.

When the mortgage, held by a building and loan association, was discharged the appellee received a rebate approximating fifteen hundred dollars and of this she gave five hundred dollars to her husband to be deposited in their joint savings account. Also, while their marriage relationship still existed she sold two shares of stock from which she realized two hundred and thirty dollars and that was likewise deposited. From a fair construction of the evidence it developed that the husband had paid about sixteen hundred dollars on the building and loan mortgage, had invested approximately five hundred dollars on alterations to the house and that the wife had withdrawn two hundred dollars from the joint checking account. At the conclusion of their marriage there remained in the joint checking and savings accounts about thirty-two hundred dollars, all of which the husband appropriated.

It will be seen that the master allowed the appellee twelve hundred and seventy dollars more than she had actually placed in the joint funds but the facts and the circumstances.

of the case seem thoroughly to justify the conclusion that she was entitled to the additional amount when her contributions are considered and, particularly, when we remember that for more than a decade appellant was relieved of the cost of shelter because he and his wife occupied property for most of that time owned by her, and that for a period of six years the money paid for rental of the first floor of her separate property was either collected by him or used by her for the upkeep of their household.

It is, of course, impossible to determine with particularity the debits which should be charged to, and the credits which should be allowed, the husband; however, it seems to us, after a review of all the testimony relevant to this phase of the case that no injustice was done the appellant by allowing the appellee the sum of two thousand dollars.

There can be no doubt that the bank accounts of thirty-two hundred dollars contained seven hundred and thirty dollars placed there by the appellee and it is equally plain that there is reflected in the remainder of approximately twenty-five hundred dollars the amounts saved because of the frugality of the appellee and money actually paid for the rental of her property. The master calculated that there should be returned to her the cash she had supplied and approximately one half of the residue. We cannot but decide that this was a fair determination of their respective claims to the accounts.

The only remaining feature of the litigation requiring our consideration is the petition of the appellee for attorney's fees which is strenuously resisted on the rather unique ground that the final decree had become absolute so far as the dissolution of the marriage was concerned and that, therefore, under the rule announced in Vinson v. Vinson, 139 Fla. 146, 190 So. 454, it would be improper to grant her request. He argues that the provisions relative to the divorce became absolute because he challenged only the ones respecting the property settlement and the payment of alimony. This assertion is made despite his notice of appeal "to review the final decree"—all of it.

The cited case is readily distinguishable from the instant

one. There, in a contempt proceeding conducted eight years after entry of the divorce, the former wife sought an allowance for attorney's fees and the court held that the marriage relationship had ceased to exist, hence, there was no basis for the application. It is true that a continuing feature of the divorce was involved but it is equally true that appeal was taken from the chancellor's order entered in a proceeding which originated long after the entry of the final decree. Here the decree itself is attacked.

We think the language of Mr. Justice BROWN in that very case: "a decree granting divorce and alimony is, of course, when appealed from, not regarded as final until affirmed by the appellate court, and pending the appeal here, this Court can . . . grant . . . counsel fees . . .," may well determine this point.

Appellant could not reap the benefit of that portion of the decree favorable to him, meanwhile appealing from the whole decree, and then, because appellee assigned no error, defeat her claim for attorney's compensation on the ground that the marriage relationship had been completely severed. It seems to us that a decision to that effect would be inconsistent and impractical.

Let us suppose that a woman were granted divorce and alimony but the awards of alimony and fees were unsatisfactory. If she appealed and questioned that one aspect could it be said that because she didn't also attack the provisions in her favor the marriage relationship had ended, therefore, she would not be entitled to an allowance for attorney's fees in the appeal?

Were we to follow appellant's reasoning litigants in future cases occupying a position similar to appellee's could make the gesture of filing a cross assignment, in which they had no confidence, and thus avoid the effect of such a holding.

Our view is that attorneys for appellee should be allowed compensation for their services in an amount to be fixed in a separate order, and that the decree should be and it is—

Affirmed.

TERRELL, BROWN, SEBRING and ADAMS, JJ., concur.

BUFORD, C. J., and CHAPMAN, J., dissent.

**14**

BUFORD, C. J., dissenting:

The record in this case shows that the marriage between the parties was never consummated by coition because the wife, although an otherwise normal vigorous woman, was unwilling to endure the pain incident to the first penetration. According to the record, she only allowed her husband (in name) to actually physically attempt coition twice in the eleven years in which they maintained a semblance of the marital relation, neither of which attempts resulted in penetration.

It is my view that the record shows that the appellant did far more for the appellee and the unthrifty members of her family whom she took into the home to be cared for and fed at his expense, than duty required him to do and that he owed her nothing more than had been fully compensated for any service rendered or for any rent of the home where she, through the exercise of her own choice, elected to live.

The record shows that she had contributed $730.00 to the joint bank account and had drawn out $200.00 to give or lend to a friend. So, I think she was entitled to have $530.00 returned to her by appellant, but no more.

I think she is entitled to have attorney's fees for services in this Court, in not more than $200.00.

CHAPMAN, J., concurs.