**RUTH MARY MARKLAND v. ALBERT J. MARKLAND**

21 So. (2nd) 145                    January Term, 1945
February 20, 1945                    Special Division B
Rehearing denied March 23, 1945

630

*McCune, Hiaasen, & Fleming* and *C. N. McCune,* for appellant.

*Saunders & Patterson* and *R. R. Saunders,* for appellee.

THOMAS, J.:

The appellant sued the appellee for divorce, upon three grounds, and sought, besides a special equity in his property and a judgment against him for $15,000, the payment by him of costs, attorneys' fees, and alimony. The chancellor granted the divorce, on one ground, and entered the judgment, but denied the claims for special equity, alimony, fees, and costs.

At the outset, and with little comment, we shall dispose of the last five questions presented by the appellant. She

insists that the chancellor should have based the decree on all three grounds alleged instead of only one. No occasion occurs to us, and no reason has been shown, for ascertaining from 1,000 pages of testimony whether she suffered any injustice because a decree found her husband guilty of but one of the three varieties of misconduct charged. That part of the decree severing the marriage tie is not challenged by either party and, as it was entered at her instance, we are at a loss to understand how it could have availed her more had it been predicated upon more than one statutory cause for divorce.

We revert to the first question, which deals with a so-called special equity. It is asserted that appellant was entitled to an interest in such property as the husband now owns because the accumulation of the property was made possible by her contributions to the expenses of the family, whereby he was enabled, because of relief from his obligations to pay them, to build up an estate, a situation arising, so appellant contends, pursuant to an understanding between them. Appellant introduces her argument with a reference to our opinion in Collins v. Collins, 153 Fla. 10, 13 So. (2nd) 445. In the cited case we found that upon the facts the chancellor had committed no impropriety in his determination of the claims to a joint account when he awarded the wife more than she had actually deposited in cash. There were taken into consideration her contribution to the marriage enterprise in services, her frugality, and the use of her individual property. We recognized the principle that a wife's contribution toward the success of the union need not necessarily be made in cash and that in case of divorce she should not be deprived of her share of the money or physical property garnered during the marriage simply because she had produced no money, but had only performed the duties of housewife. The facts, which may be learned from a perusal of the opinion, are easily distinguishable from the ones developed in this case. In the instant case the appellee-husband concededly started "with nothing at their marriage in 1912." He was a bank clerk earning $150 a month, while she was the daughter of a well-to-do father who continued her allowance

after the wedding. He, the husband, because of the expense of the household they were maintaining at the beginning of their career together found it necessary to seek extra work with firms other than his employer.

After thirty years of married life she is worth more than $230,000; and he, more than $330,000.

It would be a task indeed to undertake any sort of accounting of what each paid during three decades toward the family expenses in order to determine, on this basis, what balance, if any, might exist in her favor. The over-all picture is that of a woman with parents of affluence marrying a man who could not maintain her in the comfort, or luxury, to which she was accustomed. Her manner of living was not adjusted to his meager income, and as a consequence her contribution to the common expense, necessarily augmented by her tastes and her requirements, eventually outweighed his. Even so, because of increasing salary and income as the years passed and his experience grew, he accumulated a modest fortune from his own services and from wise investments. As we shall see, she too, prospered.

When the matrimonial venture went upon the reefs of discord, suspicion, and outright misconduct the usual ill feeling and vindictiveness broke in all fury. There came, then, the assertion that through the years she had paid for things it was his obligation to buy; that there had been an understanding that she do so in order that he might build up an estate in which both should ultimately participate; that, as divorce prevented their enjoying together the fruits of their efforts, he should account to her for her part. In presenting the question of the propriety of the chancellor's order in declining this special relief much time and space have been devoted to conflicts in the testimony, and particularly in that of the appellee, whose integrity has been harshly assailed.

A careful study of the briefs leads us to the conclusion, as it must have the chancellor, that there was no such similarity between the circumstances in this case and those in Collins v. Collins, supra, as to justify the claim of special equity in the property he owned. Here there was extravagance on the part of the wife instead of thrift. We do not

censure her for spending her money freely, for that was her right and she chose to exercise it; however, to charge against her onetime husband's property the amounts she spent lavishly is quite another matter. We think it would be inequitable to hold that she could purchase those things which he could not afford and then claim their cost against any property he eventually amassed, for if they were not within the range of his earning power there was hardly an obligation on his part to provide them then, nor is there justification for charging him with them now. We do not understand that this phase of the contest is to be governed by the law of contract, but rather by the application of purely equitable principles.

It is crystal clear that in 1926 appellant herself inherited about $125,000, which has grown by prudent investment to $230,000; that the appellee by the year 1927 was worth about $330,000, which has remained unimpaired for the last half of their life together. Under the decree each will retain his fortune, and each has sufficient money to guarantee freedom from want. No children were born to them, and so far as we know neither party is burdened with the care or responsibility of anyone else.

Of course the appellant's position is not without merit, and much of the testimony in her behalf is relevant to the principles discussed in Collins v. Collins, supra. Her able and resourceful counsel have overlooked nothing in presenting her case in a most favorable light; however, in leading us on a search for the error which it is insisted the chancellor committed, they have not shown us that similarity of facts here to facts in the cited case and cases like it which would warrant our reversing his ruling on this point.

Appellant next challenges that part of the decree denying her prayer for alimony, costs, and fees, only the last two of which are stressed. The principle has been announced that two elements must exist in order to justify a decree against the husband for items of this sort: necessity of the wife, and the ability of the husband to pay. Unquestionably the latter is present, and as unquestionably the former is not. From what we have written it is evident that she is financially in-

dependent and quite able not only to care for herself, but to discharge the costs and to compensate her counsel for their services. The matters of awarding suit money and assessing costs are discretionary, and we find no abuse on the part of the chancellor; therefore, his failure to grant this relief will not be disturbed.

'Now the appellant insists that the chancellor should "have ascertained and fixed . . . the . . . interests of plaintiff and defendant in . . . property . . . held by them as an estate by the entirety." In view of the circumstances which we shall detail it seems to us that to state the proposition is to decide it contrary to her contention. The status of property so held is fully established, and likewise the effect upon it of divorce. The parties, while the union lasts, have interests that are not severable and, ordinarily, upon dissolution of the marriage they become "joint tenants or tenants in common," each owning an undivided interest and each then privileged to bring suit for partition. Strauss v. Strauss, 148 Fla. 23, 3 So. (2nd) 727. (See 689.15, Florida Statutes, 1941, and F.S.A.) The question of the applicability of this rule where the original purchase money has been furnished by one or the other of the parties does not present itself "in view of the agreement, which was not disputed, between plaintiff and defendant to acquire the . . . property and to build the house thereon on a fifty-fifty basis and their subsequent agreement with respect to the $15,000.00 debt . . . ." We have quoted from the appellant's brief. The debt is the one for which judgment is provided in the final decree; so this property was purchased jointly, and it is not disputed that appellee owes appellant $15,000.00 for the remainder of his share. The judgment for that amount has been entered, and when it is paid she will be fully reimbursed. At any rate the decree was not questioned on that point and it was an adjudication that each of the parties paid or was obligated to pay one-half the cost. The deed created an estate by the entirety, and when the marriage was dissolved their interests in such an estate were metamorphosed to those of tenants in common.

There is no need to discuss appellant's contention that she is entitled to appellee's share of this property on account of

the special equity, for that claim was denied by the chancellor, and his action is now sanctioned by this Court.

Finally, we reach the question whether "the trial court [should] have fixed . . . the date from which interest should be computed on the debt which gave rise to the $15,000.00 judgment. . . ." Failure to provide for interest seems to have been, at the most, an oversight. Appellant thinks it should be set at rest, a view with which we are inclined to agree, while appellee simply feels that there is no need to deal with the matter because not in issue and "there is no dispute between the parties as to when the payment of interest shall begin. . . ." It may save difficulty in the future, inasmuch as the relationship between these parties has come .to a definite end, to amend the decree so that it will specifically provide for interest at five per cent, the amount appellee had paid and appellant had accepted, from the time of the last payment, 12 May 1942, until the date of the final decree, 19 August 1944; that from the entry of the decree the interest be computed at six per cent, except that the judgment, pursuant to stipulation, draw no interest from the date of the notice of appeal, 8 September 1944, until the mandate from this Court issues.

When this revision is made the decree shall stand.

Affirmed.

CHAPMAN, C. J., BUFORD and SEBRING, JJ., concur.