**MAY B. DUPREE v. TALMADGE DUPREE**

23 So. (2nd) 554                                    June Term, 1945
October 19, 1945                                       Division A

*Baxter & Clayton* and *Mabry, Reaves, Carlton, Anderson & Fields,* for appellant.

*Wallace E. Sturgis,* for appellee.

TERRELL, J.:

The appellant filed her bill for divorce alleging extreme cruelty and habitual intemperance. She prayed for alimony and a special equity in property acquired by the husband

during their married life. Appellee countered with an answer denying the material allegations of the bill of complaint and prayed for a divorce on the grounds of extreme cruelty. On final hearing, the Chancellor granted appellant a divorce for extreme cruelty, denied her any equity in defendant's property but awarded her alimony in the sum of $75.00 per month pending further order of the Court. This appeal is from the final decree.

The point brought here for determination is whether or not, under the facts presented, the wife should have been granted an equity in the property acquired by the husband during their married life.

The record discloses that the plaintiff and the defendant had been married 31 years, during which time four children were born to them, two of which are now dead, the other two grown; that they got along smoothly for about 13 years but lived a tooth and claw existence the rest of their married life. The plaintiff is from one of the most prominent families in Marion County, her father being a large grower of citrus fruits. The defendant is a man of good character, a good provider and was mail clerk at the time he married complainant. He was employed to work in the citrus business by his wife's people but had side lines from which he derived some income. The plaintiff had no domestic inclination but spent her energy looking after defendant's side lines and their common interests. They lived extravagantly and spent money freely from what she inherited and from what he made. Her father and mother died after they were married.

The plaintiff received a wedding present of $500.00 from her father and a legacy of $3,000.00 when her father died. At her mother's death she inherited $14,000.00 in cash and a one-fifth interest in 100 acres of citrus groves. When the ancestral home burned, appellant received $17,000.00 insurance, about one-half of which was spent in reconditioning another home and most of the remainder was used by the parties hereto for living expenses. She has had an income of $800.00 to $900.00 per year from her citrus properties, most of which went into the family budget. The defendant now has an income of more than $5,000.00 per year from proper-

ties acquired during their marriage. Both parties are in their late fifties and the defendant is afflicted with a heart ailment besides other physical deficiencies. The plaintiff has assets valued at approximately $15,000.00 and the defendant has assets valued at approximately $36,000.00, the major portion of which is in orange groves. The appellant made a very important contribution to appellee's estate in labor besides the funds she contributed to the family budget from time to time, Defendant brought no property to the estate when they married; everything he has was accumulated by their joint effort and both were extravagant livers.

As is usually the case, both parties were responsible for the tragedy that terminated their marital state. She seemed impressed with the idea that she was made of better dirt than he was and was indiscreet enough to remind him of it. She was a good counselor but meddled in his business affairs and sometimes made herself a nuisance. He retaliated by consorting with "John Paul Jones" and kindred spirits, would get drunk and then cap the peak of high revel by choking his wife and slapping her face. She, naturally, resented this brand of romance. Both seem to have been devoid of tact, self restraint, human understanding or other factors essential to make marital relations run smoothly.

We cannot see that this incompatibility should have had much weight in the disposition of this case. Alimony has to do with things to eat and wear and those who strive diligently are entitled to both. By this standard the parties to this cause are in the clear. They both labored and contributed to the joint estate. She is shown to have contributed thousands of dollars besides her labor which aided materially to the defendant's estate. Much of what both contributed was, doubtless, spent foolishly but there is no showing that it was spent criminally. At any rate, she is entitled to eat and live in as good style as he is, which she cannot do on account of the disparity in their estates.

Appellant has reached the age in which her earning ability is on the decline. The award of alimony runs with the life of defendant and he is shown to be in precarious health. Her

children are also entitled to participate in what she has contributed to earn. They supported their mother's contention.

It is accordingly our judgment that appellant should have been awarded an equity in appellee's estate under the rule announced in Carlton v. Carlton, 78 Fla. 252, 83 So. 87, Engebretson v. Engebretson, 151 Fla. 373, 11 So. (2nd) 322 and like cases.

The judgment appealed from is therefore reversed with directions to proceed accordingly.

Reversed.

CHAPMAN, C. J., BUFORD and ADAMS, JJ., concur.