ROBERT J. WELSH v. HELEN H. WELSH

35 So. (2nd) 6            January Term, 1948
April 13, 1948            Division A
Rehearing denied May 11, 1948

Pat Whitaker and J. Lewis Hall, for appellant.

Oliver C. Maxwell and H. C. Crittenden, for appellee.

CHAPMAN, J.:

On May 27, 1947, the Circuit Court of Polk County, Florida, entered a final decree dissolving the bonds of matrimony previously existing between Helen H. Welsh, the plaintiff

below, and her husband, Robert J. Welsh, the defendant. The final decree adjudicated the claims and disputes of the parties with respect to certain property rights and the controversy on this appeal is limited to the correctness of the rulings of the Chancellor below on questions of law and fact, but no contest or assignment of error is made by either party as to the provision of the final decree which dissolved the bonds of matrimony between the parties.

Provision (e) of the final decree recited that the parties had a joint bank account in the approximate sum of $2,800.00, and the sum was paid as the initial payment on a home where the agreed amount of the purchase price was $10,500.00. The title thereto was taken in the name of one of the husband's corporations and the corporation signed the necessary papers showing the balance due on the purchase price of the home. The Chancellor concluded that the corporation held the property as trustee for the appellant and his wife and when the corporation conveyed the property back to Robert J. Welsh, then the plaintiff below and the defendant owned the home as an estate by the entireties or as tenants in common.

Provision (f) recites that the husband, Robert J. Welsh, on March 25, 1937, when the parties hereto married, was indebted, with mortgages outstanding against his property, and the value of his equity at the time (consisting largely of a drug store situated at Winter Haven) was not in excess of $7,500.00. That the wife assisted her husband in the operation of the drug store and actively contributed to the accumulation of property and assets now by him owned and additional thereto discharged fully all her domestic duties.

Provision (g) recites that the plaintiff (wife) has separate property acquired by inheritance of the approximate value of $19,000.00. The plaintiff worked the vacation period and at other times in Welsh's Drug Store and in Key Drug Store and received no compensation therefor; she procured good lines of cosmetics for both stores, and her efforts, labor and skill substantially contributed to the defendant Welsh's accumulation of property, the value of which was decreed at the sum of "not less than $75,000.00." The plaintiff-wife was entitled to an equitable interest (a) as a tenant by the en-

tireties or (b) as a resulting cestui que trust, and, as a matter of law, was entitled to have her petition for partition of her husband's property granted, irrespective of any tenancy (a) by the entireties or (b) being cestui que trust of a resulting trust in the home.

Provision (h) recites that the wife purchased the furniture and placed the same in the home out of her separate property; that the value of the home was fixed at the sum of $15,000.00, and the equity of each found to be $7,500.00; that the plaintiff wife provided the furniture for the home in the sum of $2,500.00 and the husband expended therefor the sum of $500.00.

Provision (i) recites that as a minimum award to plaintiff wife to equalize the property between her and the husband, Welsh, plaintiff wife should be granted title to the real estate hereinafter described, free of the mortgage, and in addition thereto should be awarded the sum of $5,500.00, independent of any allowance for alimony or other allowance to her.

Provision (4) of the final decree divested the husband, Robert J. Welsh, of the home and vested the same in fee simple in the wife, Helen H. Welsh, thereafter known as Helen Henderson. Provision (5) decreed that the interest or title of Robert J. Welsh to any or all the furniture, furnishings and fixtures located in the residence or out-buildings on the premises "be and the same is hereby divested from the husband and vested in the wife, Helen Henderson."

Paragraph 5-a, 6, 7, 8 and 9 of the decree are viz:

"5-a. That the defendant, Robert J. Welsh, be, and he is hereby ordered and directed to pay to First Federal Savings & Loan Association of Winter Haven, a corporation, any balance remaining unpaid on the mortgage held by them covering the real estate, aforedescribed, and obtain a full satisfaction thereof, and deliver such satisfaction to the plaintiff, or her attorneys of record; that the defendant, Robert J. Welsh, forthwith pay to the plaintiff, or her solicitors of record, the additional sum of $5,500.00, and in default thereof, by said defendant, that the plaintiff, Helen H. Welsh, be, and she is hereby given and granted an adequate lien upon all stock of Winter Haven Pharmacy, Inc., a corporation, owned by the

defendant Welsh, and all fixtures, equipment and merchandise in the drug store known as Winter Haven Pharmacy, located at 15 - 5th street N. W., Winter Haven, Florida, to secure the payment of the cash mortgage payment and cash award, hereinbefore allowed to plaintiff, which said equitable lien, the plaintiff is hereby granted leave to foreclose against the defendant Welsh.

"6. That the defendant Welsh be, and he is, hereby restrained and enjoined from selling, or attempting to sell, the shares of stock, aforementioned, and the defendant Welsh is hereby restrained and enjoined from selling, or attempting to sell, the fixtures, equipment and merchandise situate in Winter Haven Pharmacy in bulk, and except by sale of merchandise at retail in due course of business, until the said defendant, Robert J. Welsh shall have paid the mortgage balance, aforementioned, to First Federal & Loan Association of Winter Haven, and shall have paid the cash award of $5,500.00 herein granted to the plaintiff, or her solicitors of record.

"7. That the awards herein made the plaintiff of and from the property of the defendant Welsh, when cash awards shall have been paid by him as ordered herein, shall constitute a full and complete settlement of property rights between the defendant Welsh and the plaintiff, and shall be in lieu of and in full settlement of all future claims for alimony or other allowances to plaintiff from said defendant, hereafter.

"8. That any claims of the defendant in and to the separate property of the plaintiff, Helen H. Welsh, be, and the same are, hereby set aside, cancelled and for naught held, and title to the separate property of plaintiff be, and the same is quieted against any future claims of the defendant, Welsh.

"9. That the defendant, Robert J. Welsh, and all persons claiming by, through or under him, since the filing of the bill of complaint herein, do forthwith surrender possession of the real estate hereinbefore described, and all furniture, furnishings and fixtures, located in the residence or out-buildings on the real estate aforedescribed, owned by plaintiff or defendant Welsh, on the date of the filing of the bill of complaint herein, except wearing apparel and other strictly personal effects of

the defendant, Robert J. Welsh, to the plaintiff or her solicitors of record."

After a careful study of the record and an analysis of the final decree entered below, coupled with an examination of the authorities cited, the conclusion is inescapable that confusion exists as to the proper principles of law applicable to this controversy. Section 65.08, F.S.A., provides that in every decree of divorce in a suit by the wife the court shall make such orders touching the maintenance, alimony and suit money of the wife, or any allowance to be made her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case may be fit, equitable and just; but no alimony shall be granted to an adulterous wife. Section 65.08 supra was amended by Chapter 23,894, Acts of 1947, Laws of Florida, by the re-enactment of Section 65.08 and adding the words, "In any award of permanent alimony the court shall have jurisdiction to order periodic payments or payment in a lump sum."

Chapter 23,894 supra became effective as a law subsequent in time to the filing of the bill of complaint in this cause and the entry of the final decree and no language appears therein to indicate that the Legislature intended that the Act should operate retroactively and we therefore hold that the Act as amended supra is inapplicable to this controversy. Compare Van Loon v. Van Loon, 132 Fla. 535, 182 So. 205.

Permanent alimony is a continuous allotment of sums of money payable at regular periods. Phelan v. Phelan, 12 Fla. 449. Permanent alimony is in the nature of an obligation or duty due a stranger. Duss v. Duss, 92 Fla. 1081, 111 So. 382. Permanent alimony is not a sum of money or specific portions of the husband's estate given absolutely to the wife but is a continuous allotment of a sum payable at regular periods for her support from year to year. Heckes v. Heckes, 129 Fla. 653, 176 So. 541.

The basis for the allowance of permanent alimony is the necessities of the wife and the financial ability of the husband to supply the necessity. Markland v. Markland, 155 Fla. 629, 21 So. (2nd) 145; Collins v. Collins, 153 Fla. 10, 13 So. (2nd) 445. In a suit for temporary alimony we held that if it should

be made to appear that the wife's income from her separate estate is sufficient to provide for her maintenance her application will be denied. Floyd v. Floyd, 91 Fla. 910, 108 So. 896; Phelan v. Phelan, supra.

Section (g) of the final decree supra granting the wife's petition for partition of her husband's property on the theory that all the property of the husband was held by the parties as tenants by the entireties or as a resulting cestui que trust or that the wife had by her labor acquired an equitable interest in all of the husband's property and that the same should be partitioned and lawfully awarded was bottomed on the case of Engebretsen v. Engebretsen, 151 Fla. 372, 10 So. (2nd) 322. It is quite clear that the learned Chancellor misconstrued our holding in the latter case and it is not necessary to point out the distinguishing features of the two cases. The case of Gaffny v. Gaffny, 129 Fla. 172, 176 So. 907, has but little, if any, influence on this controversy.

The doctrine of a special equity in the property of a husband on the part of the wife was recognized and sustained by this court in the case of Carlton v. Carlton, 78 Fla. 253, 83 So. 87. It appeared that she was the mother of the appellant's six children; she had generously contributed in funds and by her personal exertion and industry through a long period of time to the acquisition and development of his home and other property and the establishment of his fortune.

In Heath v. Heath, 103 Fla. 1071, 138 So. 796, this Court applied the doctrine of a special equity in behalf of the wife where it was established that she contributed materially in funds and industry through a period of years to the husband's holdings and business. Such an allowance is not alimony and is only warranted by special facts and circumstances in favor of the wife for the wife's contributions of money and services to the husband's property accumulations, above and beyond the performance of marital duties.

The special equity doctrine was applied by this Court in Windham v. Windham, 144 Fla. 563, 198 So. 202, where it was shown that the parties lived together for thirty-five years. The husband owned at the time of the marriage twelve or thirteen acres of land and a four room house and a few acres

had been cleared and set to fruit trees. The wife inherited seventeen head of cattle which she brought on the place and the cattle increased and the parties cleared more land and set out additional fruit trees and with their money additional property was acquired and the property accumulated after marriage was subject to a special equity for the wife. This rule was reaffirmed in Strauss v. Strauss, 148 Fla. 23, 3 So. (2nd) 727. The facts involved in Dupree v. Dupree, 158 Fla. 439, 28 So. (2nd) 907, are quite different from the facts presented on the record here.

The record discloses that the parties lived together from March, 1937, until the latter part of 1945, a period of about eight years, and no children were born to the marriage. There is no claim that she contributed her funds or money to the drug business of her husband but that he owned a drug business in March, 1937, at the time of the marriage. The wife expressed the view that her husband was worth around $7,500.00 at the time of the marriage and the husband testified that his net worth at the time was $25,000.00. The wife's claim for a special equity in her husband's property rests on her work and labor about the husband's drug store. It is not denied that she worked or that she was instrumental in placing in the store for sale a special line of cosmetics; also that she cooked some hams about the home and the same were sold to the customers of the business. It is contended that this service increased the business of the store and resulted in the husband's property increasing in value many thousands of dollars during the eight years she was about the store. Experienced druggist testifying in the case contradicted the claim that the sale of this line of cosmetics or ham sandwiches were very profitable lines about a drug store although the line yielded a 33⅓% profit. Other testimony is to the effect that cosmetics and ham sandwiches were sold about the store prior to Mrs. Welsh's appearance in 1937 and since she left in December, 1945, and the line is now handled by one of the regular clerks and requires no extra skill. It is the writer's view that the evidence showing a special equity in behalf of the wife and husband's property for the services rendered falls far short of the requirements set out in our adjudications.

Prior to the marriage in 1937 the wife was employed and monthly earned some money. After marriage she received $50.00 per month in the management of an orange grove. According to her testimony she owns a one-fifth interest in a 40 acre grove and its value was appraised at $44,000.00, and is now free from liens. The profits from the grove were invested in government securities and the value of the property owned in her own right on May 27, 1947, was fixed by the Chancellor at the sum of $19,000.00. We find substantial testimony in the record to sustain this conclusion. The wife testified that she was forty years of age and in good health. The husband testified that the value of his property was $48,650.00 and his net annual income $4,500.00 or more. He admits his financial ability to pay alimony if the wife can by competent testimony establish her necessity therefor.

It is our view and holding that the husband should pay to the wife (a) the sum of $1,400.00, with interest, shown to have been taken from their joint account and paid as a first payment on the home; (b) the value of her services about the drug business of the husband from March, 1937, until December, 1945; (c) the sum of $150.00 per month as alimony and the first payment to be made within thirty days after the filing of our mandate in the lower court; (d) that the furniture now in the home or the several pieces thereof be awarded to the party hereto who establishes by competent proof to the satisfaction of the Chancellor that his or her money paid for said piece or pieces of furniture.

It is our conclusion that the Chancellor below applied the improper principles of law to the portion of the final decree which attempted to adjudicate the property rights of the parties to this suit and the law requires a reversal thereof for further proceedings in the court below not inconsistent with the opinion and views herein expressed. The costs of this appeal are taxed against the appellant.

Reversed.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.