# SERIANNI v. SERIANNI.

No. 72-6622.

Circuit Court, Broward County.

April 24, 1973.

Saunders, Curtis, Genestra & Gore, Fort Lauderdale, for the husband.

Kelly, Black, Black & Kenny, Miami, for the wife.

W. CLAYTON JOHNSON, Circuit Judge.

This cause came on to be heard on the husband's petition for dissolution of marriage, the wife's opposition thereto, and the wife's claim of special equities, alimony and attorney's fees, and the court having heard evidence in the cause from March 5th through March 10th, 1973, and studied the exhibits received in evidence, and having heard final arguments of counsel for both parties on March 16, 1973, makes the following findings of fact, conclusions of law and final judgment —

### Findings of fact

Husband Charles Serianni and wife Josephine Serianni were married on November 23, 1949. It was her first marriage and his second.

Husband and wife had met shortly before in Stroudsberg, Pennsylvania, in October of 1949. Although husband in March of 1949 had started a paving business called Di-Mar Paving Co., with a net worth of $40, in October of 1949, just one month before his marriage, he did not have enough money to get back to Fort Lauderdale from Stroudsberg and had to borow $90 from his future wife to return home.

Wife prior to marriage had worked and accumulated $2,400 in cash and, in addition, jewelry with an approximate $7,000 value. The husband having no credit at the time of marriage, wife transferred her $2,400 of savings and her jewelry to husband for use in the business. Husband deposited the $2,400 in the business checking account and took the jewelry to the Dania Bank and used it to collateralize a loan for the business. Although husband once re-turned the $2,400 to the wife, he took it back again shortly thereafter to use in the business and, according to wife, has never returned it. By making her savings and jewelry available to the business, wife supplied a substantial portion of the the capital to get the business going.

Shortly after the marriage the parties purchased a house in their joint names. The business was conducted from that house for several years. The parties during those years maintained only one checking account which was used in the conduct of the business. The wife worked in the business on a regular basis from the home of the parties. At that time she acted as the message center for the business, taking and making telephone calls. She also billed and

performed whatever services her husband requested to further the business. Until the business was removed from the house, for a period of at least three years wife regularly drew a salary of $35 and husband a salary of $75 per week. At all times during the marriage, wife has been at the beck and call of the business and has performed whatever services were requested of her by husband. Among other things, she has collected bills, entertained business clients in her home and other places, acted to preserve business relationships, participated in employee relations and even gone to the quarry to sift out rock for testing.

After Di-Mar Paving Company was formed, husband formed Hollywood Quarries, Inc., Florida Asphalt, Inc., Di-Mar Trucking, Inc., Ferncrest Mining Co., Inc. and Ferncrest Land Co., Inc. Subsequently, husband obtained a substantial interest in Rolling Hills Country Club (Servan Land Co.) and certain acreage in Broward County. All of these interests trace back to Di-Mar Paving Company. The earnings of Di-Mar Paving Company provided the financial means to enter the next succeeding business and so on up through all the real, personal and intangible property in which husband has an interest. In other words, from the capital acorn planted by wife, the entire tree of Serianni businesses with all their branches sprang. It is perhaps appropriate to note that husband apparently has been an industrious, skillful and dedicated person to build the business complex that here exists — in no small measure truly a Horatio Alger success story.

At the time husband obtained the $2,400 from wife for use in the business, he told her they would be business partners and subsequently repeated this statement to wife. Wife performed other duties above and beyond that required of a wife which contributed materially to the success of the business. She attended sick members of the husband's family in and out of Broward County and funerals of members of husband's family so that he would be free to remain at the business. Although husband and wife had no children, wife treated husband's son, Fred Serianni, by a previous marriage as if he were her own and treated the son's children as if they were her own grandchildren. Wife covered for husband during extended periods of illness, among other things taking telephone calls from business acquaintances during such periods. Husband suffered from an illness which required the 24-hour attention of his wife for a period in excess of one year. Because of the extraordinary love, care and attention she gave husband above and beyond the duty of a wife, husband was enabled to go through the motions of working and the business was thereby preserved during husband's periods of illness. Husband has at all times recognized wife's equity by, among other things, making her an officer and director of Di-

Mar Paving, Inc. and Hollywood Quarries, Inc. until the parties commenced to have marital difficulties. Husband has also provided for wife from the business a new automobile annually (in recent years a new Cadillac), a maid, a man servant, yard maintenance, pool maintenance, house maintenance, insurance on her vehicles and lines of credit such as Diners Club and Carte Blanche cards and gasoline cards.

Husband because of his knowledge of wife's interest in the property held in his name has attempted to conceal from the court facts relevant to the determination of the wife's interest. He understated his assets in two voluntary proffers of his net worth filed with this court. He concealed a contract dated February 16, 1973, in which he as president of Rolling Hills Country Club has agreed to sell the assets of the club for $5,000,000, and another February 16, 1973 contract pursuant to which he and A. I. Saving have agreed to sell their interest in 160 acres adjacent to Rolling Hills for $3,360,000. He has not accounted for cash he has obtained from his personal account and has not accounted for cash obtained by cashing the checks from the businesses that never went into his personal account.

Wife by clear and convincing evidence has proven beyond a reasonable doubt special equities in all of the properties of husband, real, personal and intangible. She did not relinquish her special equities by reconciling with her husband and stipulating to a dismissal with prejudice of that certain action lately pending in the circuit court of Broward County styled Charles Serianni v. Josephine Serianni and numbered C61-942-"J"Cabot. Husband reconciled with wife with knowledge of said claim without securing any agreement, express or implied, that wife relinquished said claim.

In recent years the parties have lived by a standard of luxury. They have traveled in the highest circles of society. Husband has for many years served as the president of Rolling Hills Country Club and as such has entertained and been entertained on a grand scale, always accompanied by his lady. Husband either personally or through one of his companies has maintained a stable of race horses which have been entered at all tracks in South Florida and at race tracks in the north. Husband and wife have mingled with the very wealthy at the various turf clubs at horse tracks where his horses race. Both husband and wife have participated heavily in the sport of kings. He has cashed checks at race tracks since 1967 totaling $436,500 even though he did not cash any in 1970, the year he suffered his illness. Since 1967 he has cashed checks totaling $539,615 out of his personal account for which he cannot account and, in addition, has received and cashed checks from his

companies totaling $319,350 for which he cannot account. The Seriannis dined out frequently. When out for meals husband always picks up the check and is a lavish tipper. He has furnished his wife on two occasions with cash sufficient to travel through Europe with her mother and sister on a luxury scale. He wrote checks out of his personal account from 1967 through 1972 totaling $2,480,971. His net income after taxes in 1972, estimated by his own accountants, was $129,021 in contrast to $309,997 in checks written out of his acount. Most of his spending since 1967 for his own support and pleasure and for the support and pleasure of his wife has been in cash. Wife has reached the age of 64 and her medical and dental expenses have increased. Her personally held assets are of a meager amount comprising stocks and bank accounts of approximately $12,000.

The disclosed net worth of husband at the present date consists of the following assets owned by husband —

| | | |
|---|---:|---:|
| Cash — as declared by husband's affidavit of March 5, 1973, respondent's #10 exhibit | | $10,050.36 |
| One-half interest in Payne 86 acres mortgage receivable, respondent's #10 | | 289,662.54 |
| Personal jewelry, respondent's #4 | | 45,000.00 |
| Stockholders equity in (pursuant to respondent's #13): | | |
|     Hollywood Quarries, Inc. | | |
|     Di-Mar Paving, Inc. | | |
|     Di-Mar Trucking, Inc. | | |
|     Farmcrest Mining Co., Inc. | | |
| | $2,179,799.00 | |
| Less 50% interest of son, Fred Serianni, in Hollywood Quarries (husband claims pursuant to personal balance sheet, respondent's #4, interest of): | $ 345,637.00 | $1,834,162.00 |
| 26.79% interest in Rolling Hills Golf Course and Lodge (Servan Land Company, Inc.), net of mortgage: | | $1,018,020.00 |
| One-half interest in 160 acres contiguous to Nova University & Rolling Hills Golf & Country Club, net of mortgage: | | $1,425,394.00 |
| | TOTAL: | $4,622,288.90 |

It is also significant that the net worth found herein does not include the unaccounted for cash out of husband's personal account or the cash coming from the companies that never reached that account. A conservative approach justifies a finding that husband's net worth is at least $5,000,000.

Not included in the above net worth is the residence home and furnishings therein (located at 2503 Madison Street, Hollywood, lot 9, block 22, Hollywood Little Ranches, plat book 1, page 26, public records of Broward County) of the parties which are valued at $120,000 less a $30,000 home mortgage. The home and furnishings are held by the parties in a tenancy by the entireties.

The equities of this cause are with the wife. Her special equity is declared to be the 26.79% stock interest of husband in Servan Land Company, Inc., which represents an approximate equity of $1,018,020 or 22% of husband's disclosed net worth.

Husband resided in Florida six months prior to filing of this petition and this court has absolute jurisdiction of the parties and the subject matter of this action. The marriage of the parties is irretrievably broken.

Wife with the special equity in the businesses of petitioner here found has sufficient means to pay her own attorney's fees and costs of this action.

## Conclusions of law

A dismissal of a divorce case involving a claim for special equities with prejudice upon reconciliation does not operate to bar the claim for special equities in a subsequent divorce action between the parties. A court has no jurisdiction to adjudicate the respective property rights of the parties to a marriage in the absence of a divorce a *vinculo matrimonii.* Clawson v. Clawson, 54 So.2d 161; Zook v. Zook, 63 So.2d 643.

The mere fact that a wife has been a dutiful wife is not grounds for a awarding her special equity in her husband's estate. Welsh v. Welsh, 160 Fla. 380, 35 So.2d 6; Roberts v. Roberts, 101 So.2d 184.

If the wife advances money to the husband for use in his business, she has a special equity which must be recognized by an adequate award. 10 Fla. Jur., *Divorce,* §208, pp. 616-617; Wollman v. Wollman, 235 So.2d 315 and cases collected at headnote 2; DuPree c. DuPree, 23 So.2d 554; Williams v. Williams, 177 So.2d 865.

Where the wife has contributed materially by her industry and services to the husband's acquisition of property, she has a special equity in his estate and when a divorce is granted she is entitled to an award in satisfaction of her equity. Green v. Green, 228 So.2d 112; 10 Fla. Jur., *Divorce,* §209 at pp. 617-618; Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727; and Heath v. Heath, 138 So. 796.

The special equity must be established by clear, convincing and unequivocal testimony and evidence. Green v. Green, supra; Roberts v. Roberts, supra.

The awarding to wife as special equities of husband's 26.79% stock interest in Servan Land Company, Inc. will result in her receiving very shortly approximately $1,000,000 in cash subject to closing adjustments for the pending sale of Servan Land Company, Inc. properties (respondent's exhibit no. 3 — Agreement for Purchase & Sale). This award will in no way jeopardize husband's other solvent business operations. Husband is also to receive very soon in a companion real estate sale a cash sum of approximately $1,425,394 subject to closing adjustments for the sale of his interest in 160 acres of land (respondent's exhibit no. 1 — Agreement for Purchase & Sale).

### Final judgment

On the basis of the foregoing findings of facts and conclusions of law, the court orders, adjudges and decrees as follows —

1. The bonds of marriage between petitioner, Charles S. Serianni, and respondent, Josephine M. Serianni, are dissolved because the marriage is irretrievably broken.

2. The 26.79% stock interest of Charles Serianni in Servan Land Company, Inc., a Florida corporation, be and the same hereby is transferred to the wife, Josephine Serianni. The properties of Servan Land Company, Inc. being further described as the Rolling Hills Golf Course & Lodge which are the subject of that February 16, 1973 Agreement for Purchase & Sale (respondent's exhibit no. 3). Charles Serianni is ordered to execute all necessary documents to facilitate an orderly and expeditious closing of said transaction and transfer of his stock interest for the benefit of wife.

3. The parties henceforth, in lieu of tenants by the entirety, will own an undivided one-half interest as tenants in common with respect to the home and furnishings therein located at 2503 Madison Street, Hollywood, Florida (lot 9, block 22, Hollywood Little Raches, plat book 1, page 26, public records of Broward County, Florida). This property is presently occupied by wife who will continue to have the right of occupancy for a period of 90 days from the date of this judgment, during which time petitioner Charles S. Serianni shall make all payments for the mortgage, taxes, insurance, repairs and maintenance, with a credit to petitioner for all such expenditures at the time when said home and furnishings are sold or otherwise agreed to by the parties. If the parties cannot agree upon price and terms of sale they shall each select a registered real estate broker practicing in Broward County and these two brokers shall select a third and together they shall determine (by majority vote if conflict exists) the price and terms of sale.

4. Should either party fail or refuse to comply with the execution and/or delivery of all documents relevant and necessary to accomplish the objectives of the aforementioned paragraphs 2 and 3, then either party may apply to this court for the appointment of a commissioner to execute and/or deliver said relevant and necessary documents. Further, if such action is necessary, the party so failing or refusing to comply shall be subject to contempt penalties and/or the taxation of all fees, expenses, attorneys' fees and costs incurred due to such failure or refusal to comply.

5. Except as to the dissolution of marriage granted in this judgment this court specifically reserves jurisdiction of this entire matter to enter any further orders that may be equitable, appropriate and just. Further, both parties are ordered to take whatever action is reasonable and necessary to, and conduct themselves in a manner conducive with, carrying out the intent and purpose of this judgment.