413 So.2d 1196 (1982)
William J. CULLEN, Appellant,
v.
Mary B. CULLEN, Appellee.
No. ZZ-355.
District Court of Appeal of Florida, First District.
March 22, 1982.
*1197 George E. Day, Fort Walton Beach, for appellant.
J. LaDon Dewrell of Dewrell & Blue, Fort Walton Beach, for appellee.
WENTWORTH, Judge.
This appeal presents the question of whether, upon the dissolution of a marriage, federal law precludes a Florida court from awarding permanent periodic alimony in the amount of one half of military nondisability retirement pay. We find that such an award is not precluded, and also affirm offsetting special equities to both parties in investment property based upon contribution of purchase funds by the husband from a source unconnected with the marriage and services by the wife other than ordinary marital duties.
Appellant William J. Cullen and appellee Mary B. Cullen were married approximately twenty-two years. In the order dissolving this marriage the trial court awarded the wife permanent periodic alimony in an amount equal to one-half of the net retirement pay that the husband was receiving for twenty-four years of service in the U.S. Air Force. We reverse that portion of the order providing that the alimony award would be a charge against the appellant's estate to the extent that there might be any death benefits attributable to the retirement upon his death.[1]
The appellant argues that the award is improper, because military pay and retirement are personal entitlements. He contends *1198 that to permit an award of one-half of the husband's retirement to the wife as permanent periodic alimony runs counter to congressional intentions in providing retirement benefits for retired military personnel and is, therefore, prohibited by the supremacy clause of the U.S. Constitution.[2] The appellant's argument is grounded on the U.S. Supreme Court's recent decision in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).
McCarty involved an award to an army colonel's spouse of an amount equal to a one-half interest in his nondisability retirement pay as part of the order of dissolution of the parties' marriage. Since the husband had not retired at the time the order was issued, the award was applicable to future retirement benefits that he might be entitled to receive. The McCarty court found that such an award was in direct contravention of congressional intentions in providing nondisability retirement benefits for retired service personnel. Further, Congress had contemplated that the system was intended not only to provide for retired personnel but to assist in providing a young and vigorous military force by acting as a recruitment and reenlistment inducement. McCarty, supra, at 453 U.S. 210, 101 S.Ct. 2731, 69 L.Ed.2d 593.
Although McCarty involved an army colonel, the appellant asserts its applicability to him as a retired air force colonel. Because the nondisability retirement benefit programs appear to be substantially the same for each service, the concepts embodied in McCarty must be considered here. McCarty, supra, at 453 U.S. 210, 101 S.Ct. 2731, 69 L.Ed.2d 594. However, that decision was based on an award of a share in such benefits pursuant to a state community property law which has not been adopted in Florida and the decision must accordingly be distinguished from the case at bar. The McCarty decision determined nondisability retirement benefits to be a personal entitlement payable to retired service personnel. Clearly, the "system does not embody even a limited `community property concept.'" McCarty, supra, at 453 U.S. 210, 101 S.Ct. 2737, 69 L.Ed.2d 601.
Community property and alimony awards depend, of course, upon different legal foundations. Community property is explained as including "property and pecuniary rights obtained by, or in the name of either the husband or wife after marriage by productive faculty... ." 15A Am.Jur.2d Community Property § 3 (1976). Alimony is an allotment of sums of money payable at regular intervals or in lump sum, as distinguished from a portion of a spouse's estate, and it is an obligation imposed by law separate and distinct from the parties' property rights. 25 Fla.Jur.2d Family Law §§ 433-434; 437 (1981). This distinction was recognized in the federal garnishment statute covering child support and alimony obligations of service personnel, 42 U.S.C. § 659 (a) (1977).[3] Alimony is there defined as "periodic payments of funds for the support and maintenance of the spouse... .". 42 U.S.C. § 662(c) (1977).[4]Accord, Welsh v. Welsh, 160 Fla. 380, 35 So.2d 6, 8-9 (1948); 25 Fla.Jur.2d Family Law § 444 (1981). The federal statutory definition of *1199 alimony specifically excludes community property concepts. See, 42 U.S.C. § 662 (c) (1977).
McCarty recognized the federal garnishment statute and pointed to the distinction between alimony and community property in stating that, "it is logical to conclude that Congress, in adopting § 462(c), thought that a family's need for support could justify garnishment, even though it deflected other federal benefits from their intended goals, but that community property claims, which are not based on need, could not do so."[5] The purpose of permanent periodic alimony is to provide for the needs and necessities of life of a former spouse as established by the marriage of the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980). On the basis of that reasoning we find that McCarty does not bar the award of permanent periodic alimony from the proceeds of appellant's military retirement pay in the present case.
The trial court did err, however, in providing that this alimony award should be a charge against appellant's estate to the extent that there may be any death benefits attributable to his military retirement pay. The award was made as a part of permanent periodic alimony, and such awards in Florida are viewed as terminated upon the death of either spouse. Canakaris, supra, 382 So.2d at 1202. Remand will be necessary so that the court may correct this portion of its order.
The order also reflects an award to the wife of a one-half interest in all real property obtained since the inception of the marriage. The real property obtained by the Cullens included two condominium units in the Fort Walton Beach area. The units were purchased for investment purposes and were to be rented. The record indicates that the titles and mortgages on the units were in the names of both parties. The down payment in an amount of $7,000 was obtained by the sale of stock held in both names. An additional $10,000 for the purchase was obtained in the form of a loan from appellant's father for which the appellant was solely responsible.
The appellant claims a special equity in the condominium units to the extent of the $10,000 down payment obtained as a loan from his father. The appellant also argues that, despite the joint title, a gift of this interest in the units was not intended. The appellee responds that $7,000 of the purchase price was from the sale of jointly held stock; that all mortgage payments were made from a jointly held bank account; that the record title is indicative of the fact that the units were to be jointly held on an equal basis; and that she is entitled to a special equity due to her extensive personal labor investment in the condominium units, including refinishing of furniture, inventorying, planning of interior design, decoration, and preparation of the kitchen for use.
We affirm the determination of the lower court in awarding a one-half interest in the two condominium units to each of the parties. The record title is indicative of the fact that the units were jointly held with both parties having a right to an equal interest. Ball v. Ball, 335 So.2d 5, 7 (Fla. 1976). The record evidence supports the lower court's determination that each of the parties is entitled to an equal equity in the property.
The units had been purchased for investment purposes and were to be rented. The record supports a conclusion that the wife's personal industry in conducting various preparations for occupancy was essential to the parties' anticipated success with their *1200 investment. While the evidence would seem to suggest that the husband's contribution from funds apart from the marriage constitutes a special equity, we find no error in the court's apparent determination that the wife's efforts represented a contribution of equal value. Duncan v. Duncan, 379 So.2d 949, 952 (Fla. 1980).
Therefore, we affirm the award of equal interests in the condominium units and the monthly permanent periodic alimony award equal to one-half of the former husband's net Air Force retirement pay. The award of death benefits attributable to the appellant's Air Force retirement pay is reversed and the cause is remanded so that the lower court may conform its final order to this opinion.
ERVIN and JOANOS, JJ., concur.
NOTES
[1] The final judgment states in relevant part:

5. The Court awards as additional permanent periodic alimony unto the Respondent/wife commencing as of December 1980, a sum equal to one-half (1/2) of the net retirement pay that the Petitioner/husband receives from the United States Air Force. This shall be a charge against his estate to the extent that his estate receives any death benefits attributable to the said Petitioner/husbands retirement upon his death. The Court holds net retirement pay to mean his Air Force retirement pay less Federal Income Tax and social security payments. This shall be commencing as of any sums he receives subsequent to today.
[2] U.S.Const.Art. VI, cl. 2.
[3] 659. Enforcement of individual's legal obligations to provide child support or make alimony payments  United States and District of Columbia to be subject to legal process
(a) Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment due from, or payable by the United States or the District of Columbia, (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments. [emphasis added].
[4] § 662. Definitions

For purposes of section 659 of this title 
* * * * * *
(c) The term "alimony", when used in reference to the legal obligations of an individual to provide the same, means periodic payments of funds for the support and maintenance of the spouse (or former spouse) of such individual, and (subject to and in accordance with State law) includes but is not limited to, separate maintenance, alimony pendente lite, maintenance, and spousal support; such term also includes attorney's fees, interest, and court costs when and to the extent that the same are expressly made recoverable as such pursuant to a decree, order, or judgment issued in accordance with applicable State law by a court of competent jurisdiction. Such term does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses. [emphasis added].
[5] McCarty, supra, at 453 U.S. 210, 101 S.Ct. 2740, 69 L.Ed.2d 604, citing Hisquerdo v. Hisquerdo, 439 U.S. 572 at 587, 99 S.Ct. 802, 811, 59 L.Ed.2d 1 (1979).