901 So.2d 947 (2005)
Dennis W. HILLIER, Appellant,
v.
Sylvia IGLESIAS, Appellee.
No. 4D03-4204.
District Court of Appeal of Florida, Fourth District.
May 4, 2005.
Rehearing Denied June 3, 2005.
Neil B. Jagolinzer of Christiansen & Jacknin, West Palm Beach, for appellant.
Jorge M. Cestero of Sasser, Cestero & Sasser, P.A., West Palm Beach, for appellee.
PER CURIAM.
A former husband sought a modification in alimony, which he had been paying for 20 years. Although his former wife had long since become an attorney and was now earning approximately $150,000 per annum without his alimony, the trial court denied his request and increased the amount. We reverse.
The marriage was dissolved in 1983 when she was a stay-at-home mother. The final judgment awarded $5,000 in monthly permanent periodic alimony based on his annual income of $338,000. Eleven years later, he sought to reduce the amount, arguing that her circumstances had materially improved because she would soon graduate from law school that year and had already procured employment. The trial court denied any change, determining that although she had become rehabilitated and was then set to earn sufficient income to support herself, the cost of living has eroded the purchasing power of her alimony award, necessitating the continuance of alimony to support her at the standard at which she lived during the marriage.
Seven years after that attempt, in 2002, he again sought to have the amount reduced, or even terminated. She responded with a petition for an increase. After an extensive evidentiary hearing, the trial court concluded that he had shown a substantial change in her circumstances because her income had increased sufficiently to meet the greater part of her needs at the level established during the marriage. The trial court calculated that she needed from $19,000-22,000 monthly to achieve *948 the marital standard of living. Fixing her monthly income at $17,167, the court reduced the amount of alimony to $1,833 monthly. She moved for rehearing, arguing that the court had included the alimony in fixing her monthly income at $17,167, and that the court should have increased the amount she receives from him by $1,833. The trial court agreed with her argument and entered an order increasing the alimony award to $6,833 per month. He appeals.
In Florida the purpose for permanent, periodic alimony is to provide a former spouse with the necessities of life. As the court explained in Canakaris v. Canakaris, 382 So.2d 1197, 1201-02 (Fla. 1980)
"Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates."
Id.; see also Welsh v. Welsh, 160 Fla. 380, 35 So.2d 6, 9 (1948) ("The basis for the allowance of permanent alimony is the necessities of the wife and the financial ability of the husband to supply the necessity."); Collins v. Collins, 153 Fla. 10, 13 So.2d 445, (1943) (rule is that alimony should be determined by the necessities of the one and the abilities of the other); Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974); Sanders v. Sanders, 125 So.2d 916 (Fla. 1st DCA 1961) ("The principle is settled in this state that the amount of alimony to be awarded a wife in a divorce proceeding shall be determined and controlled by the necessities of the wife and the financial ability of the husband to meet those necessities."). The amount or level of alimony is affected by the standard of living established during the marriage of the parties. Canakaris, 382 So.2d at 1201. Section 61.14 governs the modification of alimony awards, providing that when the "circumstances or the financial ability of either party changes" either party may apply for modification. § 61.14(1)(a), Fla. Stat. (2004).
She contends that an increase in alimony was necessary because inflation has severely affected her ability to provide for herself. But there is no evidence in this record showing that inflation has had any affect on her ability to support herself. Waldman v. Waldman, 520 So.2d 87, 89 (Fla. 3d DCA 1988) rev. denied, 531 So.2d 169 (Fla.1988) ("While a loss in the dollar's purchasing power is a relevant factor in considering a modification of alimony ... there must be a showing that the national problem of inflation impacts specifically on the individual claiming inflation as the basis for modification. Inflation must have in fact created the need.").
Thus, we reverse the trial court's upward modification, finding that she failed to establish any basis to increase alimony. Townsend v. Townsend, 585 So.2d 468, 469 (Fla. 2d DCA 1991) ("We reverse the modification because the husband failed to establish a permanent, unanticipated, substantial change in the financial circumstances of one or both parties. Such proof is a prerequisite to a trial court's authority to exercise discretion to modify permanent alimony."). We affirm in all other respects.
STONE and STEVENSON, JJ., concur.
FARMER, C.J., specially concurs with opinion.
*949 FARMER, C.J., concurring specially.
I join in the reversal of the increase but I would also reverse the refusal to eliminate alimony entirely. The only undisputed purpose for alimony recognized in the cases in this statethe recipient's need is clearly lacking in this case. Even if she had a need for alimony when the marriage was dissolved, it is obvious that she no longer does.
The former wife's rationale for keeping alimony going is that it is necessary to allow her to live in the style to which they were accustomed during marriage. I believe she misunderstands the purpose behind the factor relating to standard of living. In fact I believe the cases have given this factor an importance far beyond its intended role.
The factors that the court is required to consider in fixing an amount of permanent alimony are specified by statute. § 61.08(2), Fla. Stat. (2005). The statute says:
"In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties."
Id. I note that the statute directs the court to consider all "relevant" factors but does not specify any listed factor as always relevant. I also note that the statute does not make any of these factors more important than another. Nor does the statute stipulate that any particular factor is always dispositive.
This listing of "relevant economic factors" was added to the statute in 1978 and was obviously part of the statute at the time Canakaris was decided in 1980. In amending the statute the legislature did not adopt a statutory standard for determining when to award alimony. In short, the legislature did not intend to overturn the line of cases (cited in the majority opinion) holding that the purpose of alimony is to provide the necessities of life to a needy former spouse. It is clear that the statute does not modify the foundation facts for all alimony awards, namely need and ability.
From the actual text employed in these statutory factors, I think it is clear that the standard-of-living factor is obviously not applicable in every case. For example, in a marriage of modest assets and income with only one spouse having income, it would be absurd to think the paying spouse could maintain two households at the same standard of living after the dissolution. Dividing a standard of living on a $50,000 annual income into two new households does not result in the two halves each remaining at the $50,000 level. Clearly the standard-of-living factor must be intended to apply only when "equity" would make it so.
If the standard-of-living is not a super or omnipresentfactor in setting the *950 amount of alimony, it must have only a case specific, and more limited purpose. I think its intended use was to avoid having alimony set at bare subsistence levels when the standard of living during marriage was significantly better and the payor has the ability to pay more than minimum wage, so to speak. The middle class professional, as well as the wealthy plutocrat, who exposes the spouse to a standard during marriage beyond the mere necessaries of life should be required to do better than mere subsistence with alimony. The purpose of the standard-of-living factor, therefore, is not to equalize the post marital lifestyle. Instead it is intended to avoid allowing the payor who makes enough to get away with mere subsistence.
Beyond that concept I do not believe the standard-of-living factor has much, if anything at all, to do with setting the amount of alimony in many cases. I do not think it is even relevant to do equity where both former spouses have annual earnings in the upper 10% of all incomes in this country. And I certainly do not agree, as the former wife argues here, that it is an imperative requirement in maintaining alimony long after the recipient has attained the income level she enjoys. Cf. Kahn v. Kahn, 78 So.2d 367, 368 (Fla.1955) ("We do not construe the marriage status, once achieved, as conferring on the former wife of a ship-wrecked marriage the right to live a life of veritable ease with no effort and little incentive on her part to apply such talent as she may possess to making her own way.").
In my opinion the essential need for any alimony at all is always relevant as a determinative factor. Because it is clear that the evidence in this case demonstrates beyond any doubt that she no longer has any need for alimony, I would reverse on that issue and direct the trial court to enter an order terminating all alimony.