262 So.2d 269 (1972)
Charles O. BEARD, Appellant,
v.
Louise H. BEARD, Appellee.
No. P-345.
District Court of Appeal of Florida, First District.
May 9, 1972.
*270 John M. Coe, of Coe & Coe, Pensacola, for appellant.
David H. Levin, of Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for appellee.
PER CURIAM.
Appellant seeks review of a final judgment of divorce rendered by the Circuit Court of Escambia County. The sole question presented by appellant challenges that provision of the judgment which awards permanent alimony to appellee. The latter has cross-assigned as error that provision of the final judgment which awards to appellant a sum of money inherited by him from his father during the marriage.
Appellee instituted this action for separate maintenance unconnected with divorce in which she prayed for custody of the minor children born of the marriage, the exclusive use and occupancy of the marital home owned by the parties, together with the furniture and furnishings located therein.
Appellant counterclaimed, alleging that appellee was guilty of extreme cruelty and habitual intemperance. He further alleged that the parties had been voluntarily living separate and apart from each other for a period of more than two years. Based upon the foregoing grounds, appellant prayed for a judgment of divorce from appellee.
The undisputed evidence establishes that when appellee married appellant in 1947 she was 23 years of age, had a high school education, and was working as an employee at the local telephone company earning a salary equal to that earned by appellant at that time. They lived together as husband and wife until appellant left the marital home and separated from appellee in January, 1968. During the period of their cohabitation as husband and wife, appellee worked as an employee with the telephone company for approximately 4 1/2 years, using her income to assist in defraying the family expenses. Three children were born of the marriage and lived at home with their parents until the separation in 1968.
For some ten years or more prior to the separation, appellee developed a drinking problem brought about by the voluntary use of intoxicating beverages to such an extent as to disrupt the family unit and cause bitterness and hard feelings among the members of the family toward appellee and toward each other. Family relations in the home became so intolerable that appellant established a separate place of abode for himself, leaving appellee and their three children with the exclusive use and occupancy of the home which was owned by the parties as an estate by the entireties. Appellant made weekly contributions for the support and maintenance of appellee and the children although the youngest daughter subsequently moved from her mother's home into the house occupied by her father.
Shortly after their separation appellee secured employment in the post office at the University of West Florida where she occupied a supervisory position which entailed the responsibility of operating the office with seven employees under her supervision. She retained this employment until she voluntarily resigned therefrom less than 60 days prior to the institution of this action. Appellee's reason for resigning was attributed by her to the pressures of her work coupled with the pressures exerted upon her by her children in the home due to the deteriorating relationship which had *271 developed between them. The evidence is fairly susceptible of the inference that appellee's condition of poor health which existed before and during the progress of this action was caused primarily by her excessive indulgence in alcoholic beverages which caused her to be highly nervous and experience a loss in weight. She testified, however, that she was endeavoring to overcome her drinking problem through association with Alcoholics Anonymous and a desire on her part to fully regain her health so she might return to a position of gainful employment. The evidence further establishes that appellant's net income from wages is the sum of approximately $9,500.00 annually after deductions for federal income and social security tax withholding.
By the final judgment rendered herein the trial court found that, although neither party was without fault, the preponderance of the equities lies with appellant husband and he is entitled to a divorce from appellee wife on the ground of habitual intemperance and indulgence in alcoholic beverages. By the terms of the judgment, the court awarded appellee the exclusive use of the marital home together with all furniture and furnishings located therein; the exclusive use of a 1967 Chevrolet automobile in her possession; one-half of a $15,900.00 joint savings account owned by the parties; a $1,400.00 savings account in her name on deposit in the credit union; and permanent alimony in the sum of $100.00 per week or $5,200.00 annually. At the time the judgment was rendered the oldest child of the parties had entered the military service and was self-supporting; custody of the next oldest child, a son 18 years of age, was awarded appellee upon the finding by the court that he was partially self-supporting and the only need he had from his parents was a home in which to live; and custody of the youngest child was awarded to appellant in accordance with her expressed desire. The remaining one-half of the $15,900.00 joint savings account owned by the parties was awarded to appellant, as was the sum of $11,000.00 on deposit in a Pensacola bank which was an inheritance received by appellant from his father at the time of the latter's death. A boat, motor, and trailer together with a 1961 Chevrolet automobile in possession of appellant was also awarded to him by the court.
It is appellant's position that the trial court abused its discretion under the facts and circumstances of this case when it awarded permanent alimony to appellee in the sum of $100.00 weekly. The payment of such amount out of the established income of appellant would provide appellee with the sum of $5,200.00 annually, in addition to which she has the use of their fully furnished marital home. None of the amounts so paid to appellee would be diminished by needs of the minor children, none of whom are dependent upon her for support. This would leave appellant out of his earnings the sum of $4,300.00 annually from which he is required to purchase or rent a place of abode for himself and his minor daughter whose custody was awarded to him, as well as pay all of their normal living expenses. With appellant's position we are impelled to agree.
In the earlier days of our civilization the female members of society were known as the weaker sex whose destiny it was to remain always in the home and occupy themselves exclusively in providing for the needs and comforts of the family. Their educational opportunities were generally limited, and their experience in the world of commerce and industry was almost nonexistent. Under these circumstances, when the family tie was severed by divorce, the policy of the law looked with compassion, tenderness and mercy upon the defenseless and almost helpless wife who was seldom equipped through education, training, or experience to fend for herself and provide the necessities of life for her support and maintenance.
Such conditions as related above no longer exist. In this era of women's liberation movements and enlightened thinking, we have almost universally come to appreciate *272 the fallacy of treating the feminine members of our society on anything but a basis of complete equality with the opposite sex. Any contrary view would be completely anachronistic. In this day and time, women are as well educated and trained in the arts, sciences, and professions as are their male counterparts. The law properly protects them in their right to independently acquire, encumber, accumulate, and alienate property at will. They now occupy a position of equal partners in the family relationship resulting from marriage, and more often than not contribute a full measure to the economic well-being of the family unit. Whether the marriage continues to exist or is severed through the device of judicial decree, the woman continues to be as fully equipped as the man to earn a living and provide for her essential needs. The fortuitous circumstance created by recitation of the marriage vows neither diminishes her capacity for self-support nor does it give her a vested right in her husband's earnings for the remainder of her life.
The foregoing philosophy was first expressed by Justice Roberts when, in speaking for the Supreme Court in Kahn v. Kahn,[1] he said:
"* * * And, indeed, until recent years, a divorced wife had little prospect of being able to work and earn a livelihood, and it was essential to a well-ordered society that she be appropriately maintained by her estranged husband so that she would not become a charge on the community. Times have now changed. The broad, practically unlimited opportunities for women in the business world of today are a matter of common knowledge. Thus, in an era where the opportunities for self-support by the wife are so abundant, the fact that the marriage has been brought to an end because of the fault of the husband does not necessarily entitle the wife to be forever supported by a former husband who has little, if any, more economic advantages than she has. We do not construe the marriage status, once achieved, as conferring on the former wife of a shipwrecked marriage the right to live a life of veritable ease with no effort and little incentive on her part to apply such talent as she may possess to making her own way. * * *"
In Gordon v. Gordon[2] this court reversed an award of permanent alimony to a wife whom the evidence showed was capable of working and earning an adequate income for her own support and maintenance despite the husband's financial ability to respond if such was necessary to meet the wife's essential needs.
In Weston v. Weston[3] the Fourth District Court of Appeal reversed a judgment of divorce which awarded a 50-year-old wife permanent alimony where the evidence established that she was gainfully employed earning a salary substantially equal to that earned by her husband and had been awarded the exclusive use of the marital residence in the final judgment. In its opinion of reversal, the court said:
"* * * With due regard to the recognized limitation on appellate review in cases of this type, we conclude that such a result is patently unjust, and that the court abused its discretion to the extent of requiring appellant to make periodic weekly payments of alimony. By eliminating this portion of the final judgment, the wife will still have some alimony (by virtue of the award of exclusive use and occupancy of the former jointly owned marital dwelling) and this, plus her own present income (which is substantially equal to the appellant's present income), will more than adequately meet her established needs for her support. *273 Our decision does not preclude the trial court from entering any future modification of the alimony award as may be justified by a showing of a substantial change in the circumstances of the parties."
In our recent decision of Martin v. Martin,[4] this court affirmed an order modifying a separation agreement previously entered into between the parties to a divorce action by which the husband agreed to pay his wife permanent alimony in the sum of $200.00 a month. The trial court's order relieved the husband from making any future payments of alimony to the wife as required by the separation agreement upon the finding that the wife was gainfully employed and earning a salary sufficient to meet her essential needs.
In the case sub judice appellee is 48 years of age and has demonstrated a capacity for gainful employment in a responsible position from which she is capable of earning an income sufficient to care for her normal needs. In view of the temporary impairment of her health at the time judgment was rendered, some months may have been required before she was able to completely overcome her drinking problem and regain her health sufficiently to enable her to return to work. Under the facts established by this record, the alimony of $100.00 a week awarded appellee by the final judgment rendered herein on April 5, 1971, was sufficient to have enabled her to rehabilitate herself and regain her health. Because of the foregoing, the award of permanent alimony made to appellee is herein reversed and the remaining provisions of the final judgment are approved in all respects. The elimination of alimony from the final judgment is predicated upon the conclusion that appellee has now had ample time to regain her health and again become employable but is without prejudice to her right to petition the court for a modification of the final judgment, as amended, upon a proper showing of a change of circumstances and a need for reasonable support not attributable to her own fault.
We have carefully considered appellee's cross-assignment of error regarding the award to appellant of the inheritance received by him from his deceased father but find it to be without substantial merit.
Reversed.
RAWLS and CARROLL, DONALD K., JJ., concur.
SPECTOR, C.J., dissents.
SPECTOR, Chief Judge (dissenting):
I must respectfully dissent from the opinion of the majority in this cause. In my view, the appellant has failed to demonstrate that the trial court abused its discretion by the entry of the judgment awarding alimony to the appellee. I would affirm the judgment on appeal.
NOTES
[1] Kahn v. Kahn, (Fla. 1955) 78 So.2d 367, 368.
[2] Gordon v. Gordon (Fla.App. 1966) 192 So.2d 514.
[3] Weston v. Weston (Fla.App. 1971) 251 So.2d 315, 316.
[4] Martin v. Martin, 261 So.2d 179, opinion filed April 20, 1972.