300 So.2d 719 (1974)
Evelyn BROWN, Appellant,
v.
Raymond Pierre BROWN, Jr., Appellee.
No. T-423.
District Court of Appeal of Florida, First District.
September 10, 1974.
Rehearing Denied October 15, 1974.
*720 W.A. Swann, Jr., Pensacola, for appellant.
David H. Levin, of Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for appellee.
RAWLS, Chief Judge.
The primary question posed by appellant-wife in this appeal from a final judgment dissolving the marriage of the parties is that of money and custody of the children.
The final judgment dissolving the marriage of the parties was rendered by the trial court on the 14th day of June, 1973; the pertinent portions thereof being as follows:
"1) That the Motion to Reopen is denied, the Petitioner having had ample opportunity prior to resting her case to obtain the information which she now desires to present.
"2) The bonds of matrimony heretofore existing between RAYMOND PIERRE BROWN and EVELYN BROWN are hereby dissolved.
"3) The Wife shall have custody of the children of the parties, namely: GREGORY BROWN, STUART BROWN, PRESTON BROWN and ROGER BROWN, and the Husband shall have liberal rights of visitation with the Court allowing Gregory, Stuart and Preston Brown to live with their father if this is their desire, without further order of this Court. The Husband shall pay child support in the sum of Five Hundred ($500.00) Dollars per month to be divided equally between the four (4) minor children. Upon any child reaching his twenty-first birthday, becoming self-supporting, or marrying, child support shall be reduced on a pro rata basis of $125.00 per month per child. In addition, the Husband is to provide medical expenses and school supplies for the four children, and, if financially able, he is to provide *721 private schooling and college education so long as the child receiving support diligently pursues his efforts to obtain a four-year college degree.
"4) The Wife shall have the continued use of the 1970 Dodge Dart automobile. The Wife shall also have the exclusive use and occupancy of the family home located at 2000 Morningside Drive, Pensacola, Florida, so long as it is used as a home for her and the children. She shall be required to pay the mortgage note in the amount of $154.00 each month, and the wife shall have as her sole property the furnishings in said home, however, the Husband shall have the right to remove any personal belongings from the family home. The home shall remain in the joint names of the parties as tenants-in-common.
"5) The parties shall be tenants-in-common in the Charter Bank Shares, the Jad's Lease and the Jack Hall note.
"6) Inasmuch as the Wife is a Registered Nurse and a real estate saleslady, the Court feels that she is not entitled to permanent alimony, however, the Court awards her rehabilitative alimony in the amount of Five Hundred ($500.00) Dollars per a period of six months, and thereafter for a period of one (1) year, the amount of Two Hundred Fifty Dollars ($250.00) per month."
In the year 1952, these parties entered into the holy estate of matrimony. When the coverture was consummated neither party possessed any estate of material value. At the outset of the marriage enterprise, the wife, a registered nurse, continued working and the husband, a graduate of the University of Florida (with a major in accounting), was employed. Not too long after this marital venture was launched, the husband received a promotion resulting in the parties moving to Lancaster, Pennsylvania, where the wife continued her nursing career until six weeks prior to their first child being born. At this point in time, the wife exchanged her career as a nurse for that of a mother and housewife.[1] During the next eighteen or so years, the husband successfully pursued his career as an accountant, reaching the top echelon of his profession upon earning the coveted title of "Certified Public Accountant". While the husband accumlated material wealth, the wife dutifully kept house and assumed the primary responsibility for raising and caring for the four male children born of this marriage.[2] When the marital partnership was dissolved after 21 years of coverture, the husband's financial statement reflected a net worth of $232,843.00, together with an annual earning capacity in the range of $36,000.00 to $40,000.00. The wife's material assets at the time of, and pursuant to, the judgment of dissolution when translated into money amounted to the following: 1) rehabilitative alimony  $6,000.00; one-half equity in residence  $3,000.00; one-half equity in beach cottage  $12,500.00; one-half interest in Hall note  $2,000.00; one-half interest in Jad note  $4,200.00;[3] aggregating the sum of $27,700.00.
We first consider the question of money and material goods. There are indications from the record of the proceedings below that members of the Bench and Bar consider that this Court has virtually eliminated alimony.[4] In addition, we have before *722 us a factual situation which is still prevalent even in this modern day of women's liberation, i.e., a wife who has foregone pursuing a professional career and the accumulation of a personal estate in order to be a full time mother and homemaker while the husband remains in the market place providing for the material needs of his family and accumulating a sizable personal estate. For these reasons, the time has come for us to pause and pursue an in-depth consideration of the law of alimony in Florida.
In order to fully explore the subject of alimony, the husband's testimony as to his mental attitude towards the future of the marital venture is material. We observe that the materiality is not by reason of "fault" or "no fault", but is being considered in analyzing the financial status of each party of this marital partnership at the time of its inception and its dissolution. In answer to the question: When was it that you decided to leave? The husband answered, "1964. I made a vow to myself at that time and that vow was that if I ever made enough money that I could support her and those children and have enough groceries for myself, I was going to leave." This statement indicates the husband's motivation to accumulate wealth in his own name in order to prepare for the divorce he had long desired.[5]
For at least forty years prior to the recent enactments repealing "divorce" and instituting "dissolution of marriage" (commonly referred to as "no fault"), the courts awarded a divorced wife periodic alimony almost as a matter of constitutional right. In Phelan v. Phelan, 12 Fla. 449 (1868), the Supreme Court defined alimony as: "Permanent alimony is not a sum of money or a specific proportion of the husband's estate given absolutely to the wife. It is a continuous allotment of sums payable at regular periods for her support from year to year." The Court in further discussing alimony stated:
"The actual income of the husband appears from the cases to be as a general rule the precise fact to be regarded. 2 Hag.Con., 199, 201; 3 Hag.Ec., 472; 5 Eng.Ec., 186; 2 Phillim., 40.
"But this is not a fixed and absolute rule, and there are circumstances which vary it. Before an allotment of permanent alimony is made, the ability of the husband should be made to appear, as well as the other considerations which are to be estimated in connection with his faculties, in determining the amount."
This definition of "permanent alimony" was reaffirmed by the Supreme Court in Welsh v. Welsh, 160 Fla. 380, 35 So.2d 6 (1948), where it is interesting to note that although she owned substantial property in her own name and was working, the Court awarded her $150.00 per month periodic alimony. The Court observed in Welsh that Chapter 23,894, Acts of 1947, had been amended to permit the award of lump sum alimony but refused to apply same retroactively. So, at this point in our judicial construction of alimony, a wife was entitled to periodic alimony based upon her needs and her husband's ability to pay.
The next development in the law of alimony was the appearance of the doctrine of "special equity". As early as 1919 in Carlton v. Carlton, 78 Fla. 252, 83 So. 87 (1919), the Supreme Court in a per curiam opinion after noticing that the wife, mother of six children, had contributed generously in funds and by her personal exertion and industry through a long period of time to the acquisition and development of his home and other property and the establishment of his fortune, held that the wife possessed a special equity in the property which she aided in acquiring and possessing.
*723 In Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932), the Supreme Court utilized the doctrine of special equity to relieve a wife from the harshness of the statutory prohibition of awarding alimony to an adulterous wife. Bottoming the decision in Heath, the Court stated:
"The provisions of section 4987, Comp. Gen.Laws, section 3195, Rev.Gen.St., to the effect that no alimony shall be granted to an adulterous wife, do not preclude the ascertainment and allowance by the court of an amount to the wife for her special equity in property and business of the husband toward which she is shown to have contributed materially in funds and industry through a period of years while the marriage remained undissolved."
The Supreme Court in Welsh v. Welsh, supra, examined in detail the factual situation presented and concluded that the evidence showing a special equity in behalf of the wife in the husband's property for services rendered falls far short of the requirements set out in the court's adjudications. However, the Welsh court did find that the wife had substantial assets of her own, was possessed of earning ability and also entitled to permanent alimony payable in the monthly sum of $150.00. As we read Welsh, the court granted to the wife an equitable settlement including payment for the services rendered by her to his drug business with emphasis on the permanent monthly alimony award.
As previously recited, lump sum alimony was statutorily authorized in 1947. In 1963 the legislature added the phrase "or both in its discretion" at the end of the last sentence of former Florida Statute 65.08.
In Gordon v. Gordon, 204 So.2d 734 (Fla.App. 3rd 1967), the Third District Court of Appeal, in reviewing the dissolution of a marriage of 27 years, observed that the chancellor made provisions for the custody and support of three minor children. The Court next commented upon the relative material assets of the parties which reflected that the wife was possessed of $90,000.00 in assets while the husband had a net worth of approximately $60,000.00. In approving a lump sum alimony award to the wife of $5,000.00, the appellate court held that the chancellor abused his discretion in failing to reserve jurisdiction to modify the alimony awarded to the wife (upon a showing under F.S. § 65.16) by providing for periodic payments in the future, if necessary. The Gordon court was again confronted with the question of lump sum alimony in Ortiz v. Ortiz, 211 So.2d 243 (Fla.App. 3rd 1968). In Ortiz the original final judgment provided for payment of periodic alimony by the husband to the wife in the sum of $500.00 per month, coupled with an effort to preserve the wife's right of alimony against the husband's estate. Upon petition for rehearing, the chancellor recognized his inability to charge the estate, and amended his final judgment of divorce to provide lump sum alimony to the wife in the sum of $48,400.00 payable in monthly installments of $400.00 for a period of 121 months. In rejecting the husband's contention that the chancellor abused his discretion, the appellate court first noted that the chancellor originally overlooked and failed to consider an applicable principle of law, but on rehearing found a legal way to carry out his original intent. In affirming the judgment, the appellate court stated:
"The record clearly demonstrates that the scale of living, ability of the husband to respond, the needs of the wife are sufficient to justify the award. We find no abuse of his discretion and affirm the lump sum alimony award."
In 1955 in Kahn v. Kahn, 78 So.2d 367 (Fla. 1955), Justice Roberts, speaking for our Supreme Court, announced:
"Times have now changed. The broad, practically unlimited opportunities for women in the business world of today are a matter of common knowledge. Thus, in an era where the opportunities *724 for self-support by the wife are so abundant, the fact that the marriage has been brought to an end because of the fault of the husband does not necessarily entitle the wife to be forever supported by a former husband who has little, if any, more economic advantages than she has."
This pronouncement marks the entry in the jurisprudence of this state of the concept of rehabilitative alimony. Rehabilitative means the restoration of property that has been lost. The concept of rehabilitative alimony appeared in the statutory scheme of this state in 1971 when the legislature made a major change in F.S. § 61.08. The salient provisions are:
"61.08 ... (1) ... the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payment or payments in lump sum or both... .
"(2) In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties." [Emphasis supplied.]
In 1966, our sister court, the Third District Court of Appeal, in Sommers v. Sommers, 183 So.2d 744 (Fla.App. 3rd 1966),[6] clearly stated the rule that prevailed as to awarding alimony prior to the dissolution of marriage act in 1971 (Chapter 71-241, Laws of 1971) as:
"The accepted principles are that a divorced wife is entitled to alimony which will permit her to live in a manner commensurate with that provided by her husband during coverture, if he has the ability to pay."
An in-depth review of this Court's decisions after the 1971 statutory changes is now in order to determine the current status of alimony in our state.
In Beard v. Beard, 262 So.2d 269 (Fla. App. 1st 1972), the trial court found (as is probably true in more than 90 percent of marriage failures) that although neither party was without fault, "the preponderance of the equities lies with appellant husband and he is entitled to a divorce from appellee wife on the ground of habitual intemperance and indulgence in alcoholic beverages." Next, what did the trial court do in Beard as to the material assets accumulated during their 21-year partnership as husband and wife? The trial court awarded the wife the exclusive use of the marital home; the exclusive use of automobile in her possession; one-half of a $15,900.00 joint savings account owned by the parties; a $1,400.00 savings account in the wife's name; and permanent periodic alimony of $100.00 per week. It is the last item which this Court reversed. After observing that the husband had a net income of $9,500.00 along with the custody and responsibility of supporting a minor child of the parties, we noted that payment of the periodic alimony would leave the husband the sum of $4,300.00 from which he would be required to purchase or rent a place of abode for himself and his minor daughter as well as pay all of their normal living expenses. At the same time, the wife had demonstrated her ability to support herself by having been employed in a supervisory position (with seven employees under her supervision) until sixty days prior to her instituting suit. The opinion carefully points out that:
"In view of the temporary impairment of her health at the time judgment was rendered, some months may have been required before she was able to completely overcome her drinking problem *725 and regain her health sufficiently to enable her to return to work... . The elimination of alimony from the final judgment is predicated upon the conclusion that appellee has now had ample time to regain her health and again become employable but is without prejudice to her right to petition the court for a modification of the final judgment, as amended, upon a proper showing of a change of circumstances and a need for reasonable support not attributable to her own fault."
It is upon these facts that this Court stated:
"They [husband and wife] now occupy a position of equal partners in the family relationship resuling from marriage, and more often than not contribute a full measure to the economic well-being of the family unit. Whether the marriage continues to exist or is severed through the device of judicial decree, the woman continues to be as fully equipped as the man to earn a living and provide for her essential needs. The fortuitous circumstance created by recitation of the marriage vows neither diminishes her capacity for self-support nor does it give her a vested right in her husband's earnings for the remainder of her life."
Reversing an alimony award requiring a husband to support an alcoholic wife for the remainder of her life by contributing more than he would have remaining from the fruits of his labor to support himself and his minor daughter, does not appear to us as a decision that virtually eliminates alimony.
Thigpen v. Thigpen, 277 So.2d 583 (Fla. App. 1st 1973), is next. There, the parties had lived together for approximately 24 years. The wife had demonstrated her ability as an able office manager for some 15 years prior to the dissolvement of the marriage. The substantial material assets of the marital venture were equally divided between the parties. The husband was employed as a salesman at the time of the dissolution with an average take-home pay of approximately $750.00 per month. Appellee wife had declined two jobs during this same period of time due to an allergy she was suffering caused by use of cosmetics which affected her feet and prevented her from wearing dress shoes but not sandals or slides. In setting aside permanent alimony, payable monthly in the sum of $450.00, this Court held, inter alia:
"We have carefully considered the pertinent evidence contained in the record but fail to find any reasonable basis on which the alimony [periodic] award made to appellee can be sustained. The very heart of an alimony award is and always has been the need of the demanding spouse for support and the ability of the other spouse to respond. The new concept of the marriage relation implicit in the so-called `no fault' divorce law enacted by the legislature in 1971 places both parties to the marriage on a basis of complete equality as partners sharing equal rights and obligations in the marriage relationship and sharing equal burdens in the event of dissolution." [Emphasis supplied.]
After this extensive (some readers might well add exhausting) review of the question of alimony, it is our considered judgment that a new day has been created by the 1971 legislative enactment and decisions construing same in the following respects: 1) Periodic alimony is no longer payable as nourishment or sustenance of wife or payable at regular periods for her support from year to year in the nature of an obligation to a stranger (Welsh v. Welsh, supra). Periodic alimony is primarily payable from one spouse to another, based upon the need of the receiving spouse and upon the ability to pay by the contributing spouse, giving special attention to facts as to the advisability of rehabilitative alimony. Lump sum alimony is no longer frowned upon in adjusting the material wealth of the parties at the time of dissolution of the marriage. The overriding *726 tenor of this Court's decisions in both Beard, supra, and Thigpen, supra,[7] is "a new day is born. Husband and wife are now truly partners in the marital venture sharing equal rights and obligations."
The ultimate question is now reached. How shall the material wealth of a marriage which is being dissolved be divided when one partner, the wife, has contributed her time to the marital home and children of the parties while the husband has pursued the accumulation of material goods. The evolution of the law of alimony that we have reviewed in length shows that today the contributions of each party to the accumulation of material assets must be considered in dissolving the marital partnership. Either spouse may contribute either by working in the market place or by working as a homemaker. The fact that in one marital venture a spouse is gainfully employed in the market place and pays a housekeeper to rear the children and keep house is not distinguishable from the spouse who devotes his or her full time to the profession of homemaker. The primary factual circumstance is each spouse's contribution to the marital partnership. In the case sub judice, the wife has been short changed. The wife has not been adequately compensated for the contribution that she made as a full time mother and homemaker to the equal partnership marriage. We hold that the trial court abused its discretion in awarding the wife a pittance of the material assets accumulated in the husband's name during 21 years. In so holding, we emphasize even though the cited authorities on the subject speak of "equal partners" and complete equality as partners, we are not engrafting upon the jurisprudence of this state the law of community property. On the question of alimony the judgment is reversed with instructions to the trial court to enter an award of lump sum alimony sufficient to compensate the wife for her contribution to the marriage.
We next turn our attention to the question of child custody. The trial court placed the custody of the four children with their mother with the right of the three oldest boys to live with their father if they so chose without further order of the court. Allowing minor children to pick and choose at their will the parent with whom they will reside only invites them to "play one parent against the other". Such conditions are not in the best interest of the child. The portion of the final judgment concerning the custody of the children is remanded with instructions that those children who are still minors shall be placed in the exclusive custody of the wife with visitation rights to the husband.
Last, three days prior to the final judgment being entered, the wife moved the trial court to reopen the testimony in the case alleging that the husband had falsely testified as to his financial condition and worth. In support of the motion, the wife proffered documentary evidence to the effect that the husband's holdings in certain stock transactions were of the value in excess of $900,000.00 rather than the sum of $57,000.00 listed in his financial statement admitted into evidence. The trial judge denied this motion to reopen on the ground that movant had ample opportunity to obtain the information prior to resting her case. Since the judgment appealed is to be remanded for reconsideration by the trial court of the sum awarded as lump sum alimony to the wife, it is directed that the court receive evidence as to the matters and things alleged in the subject motion to reopen.
Other points raised by way of this appeal or on cross-assignment of error are without merit.
The cause is remanded to the lower court for proceedings in accordance with this opinion.
*727 McCORD, J., specially concurs.
BOYER, J., dissents.
McCORD, Judge (specially concurring).
I agree with the opinion of Judge Rawls except that I do not agree that "rehabilitative" means "the restoration of property that has been lost." Rehabilitative alimony in the sense that it is used in the dissolution of marriage statute (Chapter 61, Florida Statutes), means (in my view) alimony paid for the purpose of rehabilitating the spouse to whom it is awarded, such as, financially supporting an ill spouse until his or her health is restored, or financially supporting a spouse until he or she can be trained for employment, or, in some circumstances, until the spouse has a reasonable time to recover from the trauma of the dissolution. Rehabilitative alimony or permanent alimony may be either periodic payments or payments in lump sum or both.
The legislature in enacting the so-called "no fault dissolution of marriage law" did not do away with permanent alimony, but it specifically authorized either rehabilitative or permanent alimony and provided:
"In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties." [Section 61.08(2), Florida Statutes]
The legislature made little change in the law relating to alimony other than to add (or we might say to suggest) rehabilitative alimony in proper cases and to authorize the grant of alimony to either spouse.
I agree that the contributions of each party to the accumulation of material assets must be considered in dissolving the marital partnership and agree with the statements of Judge Rawls' opinion in relation thereto, except that I do not consider that a spouse's proper share of those assets is rehabilitative alimony. It is not required to bear the label of either rehabilitative or permanent alimony, nor is it necessarily alimony  it may be a special equity of the spouse in the property. The court may award the spouse's proper share of the assets (all or partially) as lump sum alimony or (all or partially) as a special equity in order to do equity and justice between the parties pursuant to the evidence presented in the case.
BOYER, Judge (dissenting).
I respectfully dissent from the carefully and thoroughly prepared opinion of Chief Judge Rawls.
The law is well settled that courts should practice self discipline and refrain from entering into the legislative field: Further, the Supreme Court of Florida has clearly announced pre-emption unto itself of judicial innovations in the law. (Hoffman v. Jones, Sup.Ct.Fla. 1973, 280 So.2d 431)
Alimony came about during the era that women in general and wives in particular were placed on a pedestal by male chauvinists. Women apparently found being worshiped on a pedestal to be distasteful and commenced a virtual worldwide drive to be removed from their place of superiority to a position of equality. Why one enjoying a position of superiority would intentionally seek a lower position of equality eludes the writer, but it is a fact of social history. "Success" has been marked by loss of many heretofore existing superior rights, among them being dower and alimony as a matter of right. The legislature, in its infinite wisdom, responding to the movement for women's liberation, adopted that which is commonly referred to as "no-fault divorce". Drastic changes in the law of domestic relations was thereby wrought. That act clearly and unambiguously provides for "rehabilitative alimony".
Even before the adoption of the no-fault divorce act, change in the anachronistic, and often unfairly and unreasonably applied, law relative to alimony was heralded by Justice Roberts in Kahn v. Kahn, Sup. Ct.Fla. 1955, 78 So.2d 367, wherein he *728 stated, as quoted in the above majority opinion:
"* * * Times have now changed. The broad, practically unlimited opportunities for women in the business world of today are a matter of common knowledge. Thus, in an era where the opportunities for self-support by the wife are so abundant, the fact that the marriage has been brought to an end because of the fault of the husband does not necessarily entitle the wife to be forever supported by a former husband who has little, if any, more economic advantages than she has. * * *" (78 So.2d at page 368)
Although I agree with my brother that the above quoted pronouncement marked the entry in our jurisprudence of the concept of rehabilitative alimony, I cannot agree with his definition as contained in the foregoing opinion. Webster's Third New International Dictionary of the English Language Unabridged, 1966, defines rehabilitate as follows:
"* * * to restore (as a delinquent) by a formal act or declaration to a former right, rank, or privilege lost or forfeited: invest or clothe again with some right, authority, or dignity: restore to a former capacity: qualify again: 2 a: to put on a proper basis or into a previous good state: restore (as something damaged or decayed) to a state of efficiency and good management * * *"
The same authority defines rehabilitative to mean "of, relating to, or designed to accomplish rehabilitation." There is nothing in the definition to lead us to believe that it means the restoration of any lost property. I would define rehabilitative alimony, as used in domestic relations law, to mean that amount of money or other thing of value reasonably necessary to supplement means already available from earnings, accumulations or otherwise, reasonably required during the postmarriage period to maintain the recipient until he or she is, in the exercise of reasonable efforts and endeavors, in a position of self-support. (See Primato v. Primato, Fla.App.3d 1973, 274 So.2d 568)
In Lefler v. Lefler, Fla.App. 4th 1972, 264 So.2d 112, our sister court of the Fourth District said:
"* * * We have the view, however, that no matter which direction the flow of alimony may take, its basic nature and purpose remains the same as heretofore, i.e., to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor ability to be self-sustaining." (264 So.2d at pages 113 and 114)
I would add to the foregoing quote the additional sentence: "Such to be continued until the recipient, in the exercise of reasonable care, efforts and endeavors, has the ability to be self-sustaining."
The majority opinion recites that we have before us a factual situation wherein the wife has foregone pursuing a professional career and the accumulation of a personal estate in order to be a fulltime mother and homemaker while the husband has remained in the market place providing for the material needs of the family and accumulating a sizable personal estate; arriving at the conclusion that "in the case sub judice, the wife has been shortchanged." Such recitations are, in my opinion, assumptions. The evidence does not necessarily lead to that conclusion. Just because a woman has borne children during a marriage does not mean that she is Whistler's mother. There is a vast difference between the physical act of bearing a child and the fact of being a mother as that term is generally eulogized and used in the traditional American concept. I do not here mean to malign the appellant in the case sub judice. She might well be the ideal mother from every standpoint. She might have also been the wife that every man dreams of. However there is nothing in the evidence of this cause to justify us so finding, or finding to the contrary. She *729 may have contributed to the marriage "as a fulltime mother and homemaker" but on the other hand she may not have. The trial judge was in a much better position to make that determination than are we. For aught that we know the appellee may have had good cause to "await the day" that the children would be grown and the marriage relationship terminated.
As is reflected by that portion of the final judgment which is quoted in the majority opinion, the trial judge made adequate, indeed ample, provision for the appellant and the children of the parties. He even went so far as to require the appellee to provide for private schooling and college education which, though contrary to what we have held to be the law, (White v. White, Fla.App. 1st 1974, 296 So.2d 619), has not been complained of by the appellee and is therefore not subject to our review.
In reviewing the final judgment appealed we should not overlook the unquestioned findings of the trial judge that the wife is a registered nurse and a real estate saleslady. It certainly appears to me that the $500 per month rehabilitative alimony plus the $500 per month child support was adequate.
In my view the majority opinion constitutes a substantial departure from this Court's holdings in Beard v. Beard and Thigpen v. Thigpen, both cited therein.
I must further dissent to the provision in the majority opinion instructing that the minor children be placed in the exclusive custody of the mother. Again, in my opinion, the record is not sufficient to justify that holding. If the case is to be reversed then the instruction to the trial judge should be to take such evidence as may be necessary to determine the proper custodian for the children, taking into account their best interests. (Brust v. Brust, Fla. App. 1st 1972, 266 So.2d 400)
The findings and holdings of the trial court are fully sustained by the record. For us to hold otherwise is to substitute our judgment for his. He observed the parties and the witnesses. He also had an opportunity to observe the children.
I would affirm.
NOTES
[1] Other than working for a short period as a nurse in 1957, the wife has foregone her profession and practiced the time honored and revered profession of being a mother and housewife. The wife again worked outside of the home from October, 1964, through June, 1965, and the following two "tax seasons" to assist her husband in opening up a new accounting practice. Other than the above related "outside home" work activities, the wife has devoted her time and skills to being a housewife.
[2] In 1973 the sons were 10, 13, 16 and 18 years of age.
[3] Appellee husband cross-assigns as error this item.
[4] The husband's lawyer declared to the trial judge, "Let's assume the district court of appeals virtually eliminated alimony."
[5] The husband admitted that he had for more than one year prior to his testimony been engaged in an adulterous affair with another lady.
[6] Also see Chestnut v. Chestnut, 160 Fla. 83, 33 So.2d 730 (1948), wherein Justice Terrell, speaking for the Supreme Court, stated: "It [alimony] is awarded on the theory that marriage is a partnership to which the wife has contributed and when she withdraws from it she is entitled to reimbursement that she may not become a public charge."
[7] It is noted the counsel for appellee in the instant cause was counsel for appellees in Beard and Thigpen.