SCHWARTZ, Judge.
The appellant-wife makes the now-familiar contention that she has been “shortchanged” [1] by the financial provisions of the *578 judgment which dissolved the 24-year marriage of the parties. Specifically, she claims error in the granting of rehabilitative, rather than permanent periodic alimony, in the amounts fixed for alimony and child support, and in the failure to make an award of lump sum alimony so as equitably to distribute assets accumulated during the marriage. We affirm in part and reverse in part.
The record in this case portrays a human situation which is increasingly a feature of modern society, and is therefore far from unfamiliar to our courts. The Coluccis married in 1955, when she was 18 and he was 23. Both commenced to play their then-traditional roles in the marriage. Apart from some employment as a cashier and waitress in the first year or two, Mrs. Co-lucci devoted almost all her energies to her duties as a housewife and in raising their five children. Mr. Colucci supported the family as a successful mechanical engineer and business executive. The model of this distribution of functions contemplates, however, both as a societal ideal, and to assure the economic security of the non-earning partner, that the parties continue together in that relationship. But in a quarter-century, times, attitudes and people change. As in so many other instances, the Coluccis did not remain married, and the courts have been left to resolve, as best they can, the dislocations which result from the 1980s breakup of a 1950s institution.
At least economically, the dislocation in the Coluccis’ case was almost entirely one-sided. At the age of 42, Mrs. Colucci has a high school diploma, some college credits- and no significant work experience or marketable skills. While she expressed a commendable desire to secure a college degree and remunerative employment, she had no firm ideas concerning the field for which she was suitable or even as to the one she wished to enter. Apart from some trivial sums she receives for English language tutoring and the rental of a room, support from her husband is her only source of income. Her capital assets consist of a $3,200 savings account, two old cars, and her half-interest in the marital home which was held by the entireties, and which has a total equity of more than $100,000. She must also care for the two younger children, a girl, 11 and a boy 15, who were placed in her custody, and. who, together with a boy who has just turned 18 and has dropped out of school, live with her at home.
On the other hand, Mr. Colucci is now employed as a vice-president of Milgo Corporation. His gross annual salary is $79,000 (from which he takes home approximately $4,500 per month) plus various fringe benefits, including a vested interest, of constantly growing value, in his employer’s pension plan. As a result of receiving about $95,000 in a stock option payment during 1978 and 1979, Colucci has purchased an annuity worth over $25,000 and owns over $25,000 in other assets, in addition to his interest in the marital home.
The trial judge’s disposition of the wife’s financial demands, as reflected in a final judgment of January 24, 1980 and an order on rehearing entered on March 12, was as follows:
1. Mrs. Colucci was granted $1,000 per month in rehabilitative alimony for four years; the court specifically reserved jurisdiction to consider awarding permanent alimony or extending the rehabilitative award beyond that period. In addition, Mr. Coluc-ci was required to pay for the wife’s pre-admission testing, and for up to four years of tuition and books required if she in fact attended college.
2. $200 per month was awarded for support of each of the two minor children.
3. The wife’s request for lump sum alimony, or for the adjudication of a special equity[2] in the marital home were denied. *579 Instead, the Coluceis were rendered tenants in common of the residence. Mrs. Colucci was granted exclusive possession during the minority of the children or until she remarried. During that time, the husband was required to pay the entire mortgage payments, taxes, insurance and major maintenance. At the end of that period, the parties were to sell the house and divide the proceeds equally with the husband given credit only for any major maintenance expenditures.
On this appeal, the wife first argues that she should have been awarded permanent alimony. We agree. As we have indicated, Mrs. Colucci manifestly has no present ability to support herself and no reasonable prospects that she will be able to do so in the future. There is nothing but hopeful speculation that her admirable desire to be employed will be fulfilled in any meaningful fashion even should she indeed receive a bachelor’s degree within the next few years. Judicial notice may be taken that the job market is not favorable for a recent female college graduate in her late 40s, with a child at home and with no previous experience. And even the most sanguine could not believe that she would ever earn an amount which could serve to discharge entirely her ex-husband’s obligation to contribute to the support of the person who was his wife and homemaker for 24 years and the mother of his five children. We find this case conceptually indistinguishable, therefore, from a veritable host of decisions in which, on similar facts, this and our fellow courts of appeal have held that permanent alimony is required as a matter of law. Smith v. Smith, 378 So.2d 11 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1118 (Fla.1980); Ciraco v. Ciraco, 363 So.2d 53 (Fla. 3d DCA 1978); McCloskey v. McCloskey, 359 So.2d 494 (Fla. 4th DCA 1978), cert. denied, 368 So. 1370 (Fla.1979); Gratton v. Gratton, 358 So.2d 262 (Fla. 3d DCA 1978); Garrison v. Garrison, 351 So.2d 1104 (Fla. 4th DCA 1977), (per Alderman, J.); Bowen v. Bowen, 347 So.2d 675 (Fla. 3d DCA 1977); West v. West, 345 So.2d 756 (Fla. 4th DCA 1977); Hawkesworth v. Hawkesworth, 345 So.2d 359 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 514 (Fla.1978); McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977), cert. denied, 357 So.2d 186 (Fla.1978); McNaughton v. McNaughton, 332 So.2d 673 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 424 (Fla.1977); Yohem v. Yohem, 324 So.2d 160 (Fla. 4th DCA 1975); King v. King, 316 So.2d 322 (Fla. 4th DCA 1975); Blass v. Blass, 316 So.2d 308 (Fla. 3d DCA 1975); Lash v. Lash, 307 So.2d 241 (Fla. 2d DCA 1975); Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974), cert. denied, 312 So.2d 737 (Fla.1975); see, Kvittem v. Kvittem, 365 So.2d 791 (Fla. 4th DCA 1978) (no indication that existing earnings of wife would increase so as to justify termination of alimony after rehabilitation period or denial of permanent alimony); see also, Garrison v. Garrison, 380 So.2d 473 (Fla. 4th DCA 1980) (no indication that existing earnings of wife would increase so as to justify successive periodic diminishment of amount of permanent alimony); but cf., Barker v. Barker, 384 So.2d 925 (Fla. 1st DCA 1980).[3]
We are unimpressed with the husband’s claim that Mrs. Colucci’s right to review and modify the rehabilitative award as conferred by both Sec. 61.14, Fla.Stat. (1979) and the specific terms of the judgment below, renders it, in effect, unimportant that permanent alimony was not formally provided. To the contrary-as is obvious from the fact that the appellee himself thinks it significant enough vigorously to argue the point-it makes a real difference that the husband, rather than the wife, will have the future burden of demonstrating a change in circumstances. As then-Judge, now-Justice Alderman said in Garrison v. Garrison, supra, 351 So.2d at 1105:
The error is harmful even though the wife may at any time during the rehabili *580 tative period petition for a continuation of rehabilitative alimony or a modification to make the alimony permanent. This is so because the burden is placed upon the wife, to show significantly changed circumstances before there can be a modification. If she is entitled to permanent alimony it should be awarded now. Later, if the husband can show changed circumstances, either his or hers, he may be entitled to modification. Wilson v. Wilson, 279 So.2d 893 (Fla. 4th DCA 1973).
In accord, for example, are our decisions in Smith v. Smith, supra, McNaughton v. McNaughton, supra, and Gratton v. Gratton, supra. For these reasons, the award of $1,000 per month in periodic alimony shall, upon remand, be made permanent.[4]
Mrs. Colucci next claims that the amounts of alimony and child support were insufficient. Tested by the reasonable person standard enunciated by Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), however, there was no abuse of discretion in these determinations. Rosenberg v. Rosenberg, 371 So.2d 672 (Fla.1979); Herzog v. Herzog, 346 So.2d 56 (Fla.1977); Shaw v. Shaw, 334 So.2d 13 (Fla.1976).
Finally, the appellant earnestly argues that the failure to make a lump sum award-of either the husband’s interest in the house, its cash equivalent, or of a lesser sum-has left her in an economic position which is grossly and unfairly inferior to that of her former “partner.” As she suggests, the half interest in the home, which is the only significant property she owns as a result of the dissolution,[5] represents less than half even of the capital assets accumulated during the marriage. Far more important, Mr. Colucci has a very substantial earning capacity and additional security provided by his annuity and his pension plan. See, Cowan v. Cowan, 389 So.2d 1187 (Fla. 5th DCA 1980); Bradley v. Bradley, 385 So.2d 101 (Fla. 5th DCA 1980). In contrast, Mrs. Colucci has no real capacity for self-support and is almost entirely dependent upon her ex-husband. If he dies, her financial situation would be no less than catastrophic. See the considerations expressed in Cowan v. Cowan, supra; Nusbaum v. Nusbaum, 386 So.2d 1294 (Fla. 4th DCA 1980); Stith v. Stith, 384 So.2d 317 (Fla. 2d DCA 1980) and Desilets v. Desilets, 377 So.2d 761 (Fla. 2d DCA 1979). The appellant contends that this state of affairs is directly contrary to the supreme court’s admonition in Canakaris, 382 So.2d at 1204, that
a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be ‘shortchanged.’
As our discussion has indicated, we do not disagree with this position. Nevertheless, we decline at this time to determine ourselves if, or to what extent, the wife should receive a lump sum award. This is so because it clearly appears that the trial judge, to whose discretion such a matter is initially entrusted, has not yet exercised that discretion in the light of the now-prevailing law. The final judgment below was issued before Canakaris was released; rehearing was denied before it became final. When the able and conscientious chancellor made these decisions, he was bound by the pre-Canakaris rule that entitlement to lump sum was based either on “need,” like all alimony, or upon some economic contribution by the wife to the accumulation of property. See, Yandell v. Yandell, 39 So.2d 554 (Fla.1949). He could not have been aware of the monumental *581 change in the law effected by Canakaris[6] that lump sum alimony may, and sometimes must, be employed so as equitably to compensate the wife for the domestic endeavors now regarded as equivalent to her husband’s wage earning ones.[7] See, Rosen v. Rosen, 386 So.2d 1268 (Fla. 3d DCA, 1980). As in Bullard v. Bullard, 385 So.2d 1120 (Fla. 2d DCA 1980), we thus deem it appropriate to order that, after remand, the trial judge consider the wife’s prayer for lump sum alimony[8] in accordance with Canakaris and the cases and principles discussed in this opinion.
Affirmed in part, reversed in part and remanded for further proceedings in accordance herewith.

. Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980); Bullard v. Bullard, 385 So.2d 1120 (Fla. 2d DCA 1980); Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186 (Fla.1975).

. In the light of Duncan v. Duncan, 379 So.2d 949 (Fla.1980), and Ingram v. Ingram, 379 So.2d 955 (Fla.1980), the wife now concedes that there is no basis for her claim of a “special *579 equity” in any property either jointly owned or held in the husband’s name alone. See also Farrington v. Farrington, 390 So.2d 461 (Fla. 3d DCA 1980).

. We agree with the dissenting opinion of Judge Shivers in Barker.

. This ruling does not disturb the husband’s obligation for the appellant’s college expenses which is properly treated as a well-justified award of rehabilitative alimony, in addition to the permanent award required by our decision. See Garrison v. Garrison, 351 So.2d 1104 (Fla. 4th DCA 1977); § 61.08, Fla.Stat. (1979).

. It is true that this interest is worth a substantial sum. Nevertheless, its net value to Mrs. Colucci is diminished by the facts that the home is where she lives and that, if it is sold, it must be replaced by housing accommodations which, even if more modest, are subject to the same inflated expense.

.While much has been written about what the Canakaris case means, little has been said about what it represents. In this writer’s view, the Canakaris opinion of Justice Overton, and of course the seminal opinion of Judge Rawls in Brown v. Brown, supra, which Canakaris adopted, are shining examples of the ability of the common law and common law judges to accommodate legal principles to meet the demands of fairness generated by changing social conditions and needs. See text discussion, supra. As- members of the legal profession, we all have reason, in the most basic sense, to be proud of these decisions.

. As Cowan v. Cowan, supra; Cuevas v. Cuevas, 381 So.2d 731 (Fla. 3d DCA 1980), and other cases indicate the equitable distribution of the parties’ assets contemplated by Canakar-is may, in the light of their respective earning capacities and eligibility for other benefits, call for an award of more than half of their capital assets to the wife.

. Because we do not believe that Canakaris affects the trial judge’s decision as to the amount of periodic alimony, we do not, unlike Bullard order reconsideration of that aspect of the judgment.