464 So.2d 538 (1985)
Marilyn WALTER, Petitioner,
v.
David L. WALTER, Respondent.
No. 64641.
Supreme Court of Florida.
February 14, 1985.
Michael R. Walsh, Orlando, for petitioner.
Jeff B. Clark, Orlando, for respondent.
OVERTON, Justice.
This is a petition to review a decision reported as Walter v. Walter, 442 So.2d 257 (Fla. 5th DCA 1983), in which the Fifth District Court of Appeal reversed a trial court award of permanent alimony in a dissolution proceeding. In its decision, the district court restricted the discretionary authority of trial courts to use permanent alimony by directing that permanent alimony should be awarded only as "the last resort." Id. at 259. We find direct conflict with our decision in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and we quash the district court's decision.
The essential legal issue to be resolved is whether the test for the award of permanent alimony formulated by the district court in the instant case is proper and consistent with the criteria established by this Court in Canakaris and its progeny. The district court held that "[p]ermanent *539 alimony, being a fixed and comparatively unadjustable form of alimony should be the last resort rather than the first." 442 So.2d at 259. It concluded that the trial judge must first consider awarding rehabilitative alimony for "an appropriate period" unless "there is no question about the permanency of the inability to self-support." Id. We find that the district court's holdings significantly modify the guidelines which we established in prior decisions for the award of permanent alimony. This Court clarified those guidelines in Canakaris, where we stated:
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates.

... .
While permanent periodic alimony is most commonly used to provide support, in limited circumstances its use may be appropriate to balance such inequities as might result from the allocation of income-generating properties acquired during the marriage.

382 So.2d at 1201-02 (emphasis added).
By requiring trial courts to utilize permanent alimony only upon a showing of lack of capacity for self-support and only as a last resort, the district court largely eliminated the Canakaris criteria of "the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates" from the trial judge's consideration. Id. It also appears to have restricted the trial court's ability to use permanent alimony to "balance such inequities as might result from the allocation of income-generating properties acquired during the marriage." Id. at 1202. By its holding, the district court attempted to establish, as a new rule of law, the presumption that rehabilitative alimony generally must be awarded for an appropriate period before permanent periodic alimony may be made part of a final judgment. We reject this limitation on the discretionary authority of trial courts to utilize permanent alimony in dissolution proceedings. We do not dispute the general authority of the district courts of appeal to establish rules of law, but we must conclude that the strict rule of law set forth by the district court in the instant case is inappropriate because it eliminates from the trial judge's consideration factors that must be evaluated if a just result is to be ensured.
In reviewing the trial court's disposition of property and award of alimony and support, the appellate court's responsibility is to determine from the admitted facts, or the facts taken most favorably to the prevailing party, (1) whether the rules of law were applied correctly and (2) whether the trial court's discretionary authority was reasonably exercised under the test set forth in Canakaris. The correction of an erroneous application of law and the determination that the trial court abused its discretion are two separate and distinct appellate functions. An erroneous application of a rule of law is illustrated by a trial court order requiring payment of support for a child who has reached majority and is not dependent by reason of unusual circumstances. See, e.g., Grapin v. Grapin, 450 So.2d 853 (Fla. 1984). An example of an appellate court's proper determination, upon known facts, that the trial court abused its discretion is found in the oft-cited decision of Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974). The decision of Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983), illustrates the finding of a reasonable exercise of discretion.
This Court has repeatedly stated that appellate courts, in examining the discretionary acts of trial courts, must not reweigh the facts. In Conner v. Conner, *540 439 So.2d 887 (Fla. 1983), when this Court stated that "[t]he determination that a party has been `short-changed' is an issue of fact and not one of law," we were simply reaffirming that view. Id. at 887 (citing Shaw v. Shaw, 334 So.2d 13 (Fla. 1976)). That statement was not intended to either broaden or restrict the authority of the district courts of appeal to review the reasonableness of discretionary acts upon admitted facts or the facts taken most favorably to the prevailing party. That is how we interpret the use of the term "short-changed" in Brown. The Brown court, by its decision, did not broaden its reviewing authority or reevaluate the facts, but properly found, under known facts, that the trial court had not acted reasonably and had abused its discretion. 300 So.2d at 726. As expressed in Marcoux v. Marcoux, 464 So.2d 542 (Fla. 1985), released simultaneously with this opinion, the critical determination is whether the trial court abused its discretion.
While we recognize the significant responsibility of the district courts to review the reasonableness of discretionary acts of trial courts in dissolution proceedings, we must reject the establishment of new rules of law that would unduly restrict the discretionary authority of trial judges to render equitable property dispositions or support and alimony awards. See Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). We reiterate that "[i]n considering the appropriate criteria for the award of the different types of alimony, it is important that appellate courts avoid establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible." Canakaris, 382 So.2d at 1200 (emphasis added). That statement reflects our recognition that the discretionary authority granted trial judges in dissolution matters is necessary because such cases are not susceptible to fixed pattersn. The unique characteristics of the instant case illustrate the reason flexibility is needed to assure equitable property dispositions and support awards.
The parties in the instant case were married in 1965. Three children were born of the marriage. In 1972, the petitioner, Marilyn Walter, instituted a dissolution proceeding against the respondent, David Walter, because he was involved in an affair with an employee of the restaurant where he worked as a supervisor. The record reflects that this conduct may have resulted in the termination of his employment. The parties acknowledged in an agreement, made part of the final judgment of dissolution, that because David was unemployed, he was unable to pay child support or alimony at that time. The trial court specifically recognized this fact in the final judgment and reserved jurisdiction to enter future orders pertaining to child support or alimony.
Three months after the dissolution, David moved back into the home he had conveyed to Marilyn as part of the divorce settlement. He lived there for approximately six months before moving to Brevard County and opening a restaurant. Marilyn testified that David then persuaded her to move to Brevard County with the hope of reconciliation. Marilyn sold the former marital home at a profit of $15,000. David asked Marilyn for a loan to open a second restaurant, in Cocoa. Marilyn agreed and loaned David $10,000 from the proceeds she received from the sale of the home. David executed a promissory note in the amount of $10,000 at 15 percent interest, agreeing to repay this amount in five years in monthly installments of $250, with the first payment being due on October 1, 1974. Marilyn also loaned David $2,000 for a down payment on a home in Cocoa, where she and the minor children now reside pursuant to the modification judgment. Marilyn testified that after she moved to Brevard County, David requested that she stay at home with the children rather than work. From the spring of 1974 until August, 1975, David paid Marilyn $200 per week. She then began to work for David at one of his restaurants. After she began working, she continued to receive the $200 per week, but in the form of paychecks drawn on the business account *541 rather than as support funds. She worked at the restaurant until May, 1976, when she resumed the role of full-time mother and housekeeper. From May, 1976, to June, 1977, David again gave Marilyn $200 per week for the support of the family. From June, 1977, until December, 1981, Marilyn again worked for David in his restaurant businesses. During this period she received a salary of $300 per week and was promoted to a managerial position.
In the modification proceedings, David contended that the amounts paid to Marilyn were payments on the $10,000 note. Marilyn testified that she had not observed a notation on the checks indicating they were loan payments, that David never told her they were loan payments, and that she never intended to credit them on the loan. Marilyn also testified that her net takehome pay while working for David was $950 per month during 1981, and that she had permitted David to declare the three minor children as dependents on his federal income tax each year since the dissolution. The record further reflects that Marilyn, David, and the three children lived together periodically after the dissolution in 1972 until approximately nine months prior to the time Marilyn instituted the modification proceedings.
Marilyn testified that, in December, 1981, upon returning from a one-week vacation over Christmas to visit her family, she found she had been terminated from her employment as manager of David's restaurant. The evidence reflects that David had changed the locks on the restaurant and applied her last two paychecks toward an outstanding company loan. At the time of trial Marilyn was unemployed and had sought employment for one and one-half months. She requested $1300 per month in alimony and $800 per month in child support. The record at trial reflected that David owned two homes, a condominium, and the real property in Cocoa and Melbourne on which his restaurants were located; that he was the sole shareholder in the corporation that operated the restaurants and that the corporation owned an $80,000 boat purchased in 1980, upon which monthly payments of $1,300 were being made, and a current model Cadillac Seville. The evidence established that David's average monthly checking account balance during 1980 and 1981 was $5,481.54. Testimony further reveals that Marilyn is in good health; that she holds a degree from Brevard Community College; that, except for limited experience as a telex operator, she has worked only in the restaurant field; and that she could expect only a minimal salary in any employment.
Upon these facts, the trial judge entered his final judgment which provided in part:
2. The Court denies the Former Wife's claim for a conveyance of the Former Husband's interest in a residence located at 2966 Barkway Drive, Cocoa, Florida 33922 as lump sum alimony. The Court, however, awards to the Former Wife sole and exclusive occupancy and possession of this residence until she shall remarry or until the youngest child of the marriage, Christopher, attains the age of eighteen years, dies, marries, or either the Former Wife of the youngest child permanently leaves said residence. During the time of the Former Wife's sole and exclusive occupancy and possession of said residence, the Former Husband shall as an incident to child support make all mortgage payments on said residence, pay all of the taxes and insurance and all repairs for said marital residence.
3. That the Former Husband shall pay to the Former Wife $350.00 per month, per child for the support of Patrick Walter and Christopher Walter until each child shall attain the age of eighteen years, die, marry, or come to permanently reside with the Former Husband. The child support payments shall commence March 1, 1982 and shall continue on the first of every month thereafter as provided for in this Order.
4. That the Court orders the Former Husband to pay to the Former Wife the sum of $350.00 as permanent periodic alimony. The monthly permanent periodic alimony to be paid by the Former Husband to the Former Wife shall continue *542 until the Former Wife remarries or the death of either party. The alimony payments shall commence March 1, 1982 and shall continue on the first of every month thereafter as provided for in this Order. At such time as the youngest child of the marriage attains the age of eighteen years it is the Court's determination that the issue of permanent alimony to the Former Wife be revisited unless said permanent periodic alimony is earlier modified upon a showing of a substantial and material change of circumstances under F.S. 61.14, 1982 as amended.
(Emphasis added.) In reviewing the facts, it is clear that the trial judge resolved the support issues by providing Marilyn and the children with the use of the premises in which they had been residing for approximately five years, together with approximately the same amount of real dollars that she had been receiving from David and/or his business for the support and maintenance of the family unit for at least a year prior to the date the modification petition was filed. Further, the trial court found a future substantial and material change of circumstance by directing that the issue of permanent alimony be revisited after the youngest child reached his majority, unless the award had been previously modified. In our view, the trial court's award is tailored to the unique circumstances of the parties, and is consistent with the needs of Marilyn and the children and the ability of David to maintain the standard of living established by the parties. Under the facts and circumstances of this case, we find the judgment of the trial court to be reasonable.
We quash the decision of the district court and remand with directions that the judgment of the trial court be reinstated and that the cause be remanded to the trial court for a determination of petitioner's entitlement to and amount of attorney fees in the appellate proceedings.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.