793 So.2d 1121 (2001)
Donald DEAN, Appellant,
v.
Marie Martin DEAN, Appellee.
No. 5D01-40.
District Court of Appeal of Florida, Fifth District.
September 7, 2001.
Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, for Appellant.
N. Lee Sasser, Jr., of Sasser and Weber, P.A., Orlando, for Appellee.
SHARP, W., J.
Donald Dean (Donald), the former husband, appeals a final judgment of dissolution of marriage and an order denying his motion for a new trial. Donald argues that the trial court erred in awarding the former wife, Marie Martin Dean (Marie) a portion of Donald's pension plan because *1122 the two had earlier separated and distributed certain assets pursuant to an oral separation agreement. He also claims that the trial court incorrectly applied the law. We disagree and affirm.
The parties were married in 1978 and ceased living together in 1991. They have maintained separate residences since that time. At the time they separated, they agreed upon a division of most of their assets: Marie received cash and Donald received non-liquid assets. But there was no evidence as to any specific agreement between the parties regarding Donald's profit sharing plan, and it was not actually divided.
Donald claimed that they intended to permanently separate and divide their property in 1992, in 1996 (when he first asked for a divorce) and in 1997. However, he offered neither a specific date that the alleged agreement was made, nor the specific property it covered. It did not include alimony or life insurance, as those obligations were set by the court. Marie claimed that the parties did not intend to terminate the marital relationship or partnership, and cited reconciliation discussions, an anniversary celebration, and other similar incidents, including sexual involvement. Her position was that the relationship was the same, although they lived in different residences.
The final judgment recites that the parties' standard of living during the marriage was one of upper middle class. The marriage was of 20 years duration, and Marie was 56 at the time of dissolution. Donald was an engineer, earning over $100,000 per annum. Throughout the marriage, Marie was primarily a homemaker. Her only employment was in a temporary position as a proofreader at Red Lobster for approximately three months in 1995, at which time she received a salary of ten dollars per hour. She has a history of reoccurring depression and has made several suicide attempts, to the point that she is not able to work. As a result, the court found that she required permanent periodic alimony to survive, and it awarded her $3,000 per month. The court also found that the bulk of the parties' assets were in retirement plans, and residences.
The trial court determined that the remaining marital assetDonald's profit sharing planshould include accumulations to the account after the parties separated. Pursuant to section 61.075(6),[1] the cut off date for determining assets and liabilities to be identified or classified as marital assets is the earliest of the date the parties entered into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of the petition. The court found that Donald had offered no evidence as to the specific time the settlement agreement was entered into and little evidence as to what the actual terms of the agreement were. In fact, the court found that Donald had presented no competent evidence that an agreement was reached and consented to by both parties. Thus it selected the date of filing.
The parties' acts and the evidence presented at best established only a partial settlement as to some of the marital *1123 assets, at some earlier date, but it did not specifically include the profit sharing plan.[2] Further, section 61.075(5)(b) sets out substantive requirements for a judge to follow in determining whether an asset is nonmarital, and thus the sole property of one spouse. With regard to separation agreements which exclude assets as nonmarital, they must be pursuant to a valid written agreement between the parties under section 61.075(5)(b)4.[3] That requirement has not been met in this case.
In addition, a cut off date prior to 1998, when the petition was filed, to determine marital assets would be inappropriate in this case because section 61.075(6) necessarily assumes that the date of the separation agreement must be established at trial. In this case, the husband was uncertain of the actual date of the alleged agreement, and argued at least two different dates: 1992 after the parties separated, and 1996 when he first told the wife he wanted a divorce. The trial court's determination that 1998 should be the cut off date grew out of its finding that there was no valid separation agreement encompassing this asset. That "fact finding" was supported by competent evidence.
The dissent opines that under section 61.075(6), Florida Statutes, the test for determining the date to identify marital assets for purposes of equitable distribution is when the spouses agreed or intended to withdraw from the marital relationship. The problem in this case is that there was conflicting evidence concerning the parties' intent vel non, to withdraw from the marital relationship, leaving the determination of this fact to the trial judge. Marcoux v. Marcoux, 475 So.2d 972 (Fla. 4th DCA 1985). Had the parties truly decided to permanently separate and cease their marital relationship, they could have instituted divorce proceedings or otherwise formalized their separation. Failing to do so, both parties ran the risk that at some future date a trial judge, in exercising his discretion under section 61.075(6), would distribute any subsequently acquired assets in a manner not to their liking. So long as competent evidence supports a trial court's fact finding, appellate courts should affirm, and refrain from acting as new "fact finders." Nor should appellate courts create new rules of law binding on the trial court's discretion in family law cases. Walter v. Walter, 464 So.2d 538 (Fla.1985).
AFFIRMED.
COBB, J., concurs in result only.
HARRIS, J., dissents with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
The issue in this case is whether a wife who, pursuant to an agreement to separate, received over one-half of the parties' then disposable assets, purchased a home in her name as a single person, and from that point on lived separate and apart from her husband continued to accumulate an interest in the husband's pension plan after the date of separation as though she remained a participating partner in the marital relationship. The majority says yes. I disagree.
*1124 The issue must be resolved, I believe, by the application of section 61.075(6), Fla. Stat., and common sense. Section 61.075(6) incorporates two provisions: one involves judicial discretion, the other does not. If the parties entered into a separation agreement without providing an alternate date for classifying assets and if that agreement predates the filing for dissolution, the court must use that date for determining whether the asset is marital or non-marital. The court then, pursuant to the said statute, may evaluate those assets so determined to be marital based on its discretion as to what is fair and equitable.
A separation agreement is nothing but an agreement to separate, divide the marital assets and live separate and apart during that year.[1] Although the specific date during the year 1992 may not have been established, there is no question that the parties did agree to separate, divide the marital assets, and live apart. Therefore, the date of December 31, 1992, was established by the record as the latest time the agreement could have occurred.
The majority fails to explain why one who is not participating in the marriage partnership is nevertheless entitled to continued benefits from the labors of the husband. From the date of the parties' agreed separation, the wife became a single woman without portfolio. After the agreed separation, the wife provided none of the quid-pro-quo services to the marital partnership which prompted the court in Brown v. Brown, 300 So.2d 719, 726 (Fla. 1st DCA 1974), to recognize a wife's legitimate claim in the property acquired by the husband during the marriage:
How shall the material wealth of a marriage which is being dissolved be divided when one partner, the wife, has contributed her time to the marital home and children of the parties while the husband has pursued the accumulation of material goods. The evolution of the law of alimony that we have reviewed in length shows that today the contributions of each party to the accumulation of material assets must be considered in dissolving the marital partnership. Either spouse may contribute either by working in the market place or as working as a homemaker ... The primary factual circumstance is each spouse's contribution to the marital partnership.
It is neither just nor fair to treat a spouse who, by mutual agreement, is living separate and apart the same as a spouse who is actively contributing to an ongoing marital relationship. That is why, I believe, the legislature determined that if parties agree to separate and to thereafter live separate lives, they will no longer receive the benefit of sharing in the property acquired by the other spouse after separation.
Based on the trial court's finding that a separation agreement was not proved, a finding clearly unsupported by this record, and the majority opinion herein, the individual residences of each spouse and the enhanced value of such residences since the date of separation would continue to be marital assets. So also would be any pension plan acquired by the wife after separation. *1125 This was not the intent of the parties by their agreement nor is it sanctioned by section 61.075(6). The trial court's error stems, I believe, from its misconception that to be legal, an oral separation agreement must be read into the record. There is no such requirement in section 61.075(6).
Once an agreement to separate and share the divisible marital assets is made (and fully executed as in this case), it is immaterial that the parties discuss reconciliation. The unrefuted testimony is that any such efforts were unsuccessful.
The legislature did not require, as does the majority herein, that the separation agreement must cover all the assets of the parties. Here, there is no question that the parties separated in 1992 and have lived separate and apart since that date. There is also no question that in 1992 the parties divided marital assets, pursuant to said separation agreement. Of the $424,000 in assets (exclusive of the pension plan at issue herein) the wife received $219,000. The section 61.075(6) test is not when the claiming spouse agreed concerning a particular asset; it is when he or she agreed to withdraw from the marital partnership.
The parties did not, at the time of their agreement to separate in 1992, agree on what portion of the husband's pension plan would go to the wife. This is because the plan was still fluid. Even so, the parties' interest in that plan should be determined as of 1992, if for no other reason than because section 61.075(6) requires it. Had said statute intended that a classification of marital assets must depend on the parties' specifically designating such allocation (that is, that only those assets specifically included in the agreement are relevant), it would have made the contents of the parties' agreement and not the date of the agreement controlling.
The wife took her share of the divisible assets in 1992 and ceased any marital contributions. The reason for sharing property accumulated as marital assets is that both parties by working together in a marital relationship created such assets. The wife did nothing to assist the husband in increasing the pension benefits after 1992 and should not now share in any such increase which is based on the husband's higher income or promotions since the date of separation. That is not to say that the wife should not participate in any increased value of her share of the pension plan since 1992 resulting from her interest remaining in the plan. That is why the statute permits the court to use its discretion in evaluating the assets as of a time which is fair under the circumstances. The wife should share in any increase, in the value of the pension plan since 1992 (after eliminating any increase due to raises, bonuses and promotions the husband received since the date of separation). In other words, the wife should be entitled to fourteen years credit (the length that the plan existed during marriage prior to the separation agreement) against the current value of the husband's pension plan (after adjustments) rather than twenty-one years credit (the length of the marriage including the almost eight years of separation).
This, I submit, is the policy established by the legislature relative to the post-separation rights of one spouse in the after-acquired property of the other and is the same policy adopted by the supreme court in Boyett v. Boyett, 703 So.2d 451 (Fla.1997), relative to the post-dissolution rights of a divorcing spouse to the increases in the pension plan of the other spouse earned after the date of dissolution. There is no reason that policy should not be applicable here.
NOTES
[1] Section 61.075(6) provides:

(6) The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage. The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances. Different assets may be valued as of different dates, as, in the judge's discretion, the circumstances require.
[2] Parties may resolve their disputes by way of partial settlements. See, e.g., Flemming v. Flemming, 742 So.2d 843 (Fla. 1st DCA 1999); Fast v. Fast, 654 So.2d 958 (Fla. 3d DCA 1995).
[3] Nonmarital assets include,

(5)(b)4. Assets and liabilities excluded from marital assets and liabilities by valid written agreement of the parties, and assets acquired and liabilities incurred in exchange for such assets and liabilities. (Emphasis added).
Other exclusions in that statute are not relevant to the facts of this case.
[1] The majority's assertion that whether the parties actually agreed to separate was a factual issue for the court to determine is simply without merit. There was testimony that the parties at some time after the separation agreement considered reconciliation but, since such reconciliation never came to pass, such testimony was irrelevant. The agreement to separate and to divide assets was an executed agreement. After the wife purchased a home in her name as a single woman and accepted over $200,000 of what had previously been marital assets, it's a little naive to contend that a separation agreement was not really intended.